# Wright *versus* Wood.

1. In a return to a joint and several commission it was stated that the depositions were taken *by virtue* of the commission, and at the end of the interrogatories and answers was the name of each witness and of one of the commissioners, and the signature of the latter was to each page. The return was signed by the same commissioner without a seal—but along the seal to *the envelope* was signed his name as commissioner: *Held*, that the commission was properly executed.

2. A power of attorney executed by an agent of the defendant without the intervention of the latter, and on which the suit was not founded, may be proved by the party who executed it. The subscribing witnesses need not be called.

3. The rejection of evidence offered to prove a fact which is afterwards found in favor of the party who offered the evidence, is not material.

[Wright v. Wood.]

4. The plaintiff claimed under a deed from the children and heirs of a former owner; and the defendant under a deed from the ancestor which was unrecorded. *Held*, that the possession of one either in person or by his tenant is notice of his unrecorded title; but the possession of *an intruder* is not notice of the title of a stranger. A mere possibility that information of the defendant's title under the unrecorded deed could have been obtained by the plaintiff from the intruder, will not raise the presumption of notice of it.

5. A judicial sale of an interest in a tract of land, does not amount to notice of such sale to a stranger to it, the party sought to be affected by it not having actual notice of it.

6. There is no efficacy in *a possession* held under an adverse claim which had terminated before the plaintiff began to negotiate for the purchase of the premises.

7. A point not made below is not the subject of an assignment of error.

ERROR to the Common Pleas of *Bucks county*.

This was an action of ejectment brought in August, 1849, in which William Wood was plaintiff, and Robert Wright defendant, to recover the whole of a tract of 164 acres of land situate in Bristol township, Bucks county.

The plaintiff claimed under deeds from children of Jane Vanschuyver, executed respectively in October, 1846, in December, 1846, and on 3d January, 1847.

The defendant, on the ground of the illegitimacy of Jane Vanschuyver, claimed under a deed of William Sisom and wife and Martha Toombs, to William F. Swift, dated 17th March, 1818, and duly recorded, the grantors claiming *as heirs at law* of Rachel Swift, daughter of Rachel Swift, formerly Rachel Sisom, a daughter of Joseph Sisom; William Sisom and Martha Toombs, two of the grantors, being brother and sister of Joseph Sisom, and being next of kin to his children John and Rachel, if *Jane* were illegitimate. The defendant also claimed the whole tract under a conveyance by Samuel and Jane Vanschuyver, in 1821, to Joseph Hulme, under whom the defendant claimed title. The deed to Hulme was however not recorded when the deeds to the plaintiff were made.

John Sisom by his will, proved February 27, 1799, devised the land in dispute as follows:—"I give and devise the messuage and tract of land, which I purchased of Pearson Mitchell, situate in Bristol township aforesaid, with the appurtenances, to him, my said son Joseph, during his natural life, and then to be equally divided among his surviving *children*, to be holden by them, their heirs and assigns in severalty."

Joseph, the son, died before the testator, leaving three children, viz. Jane, John, and Rachel. *John* died in his minority without issue. *Rachel*, married to William F. Swift, died on the 17th of December, 1816, leaving a husband and one child, named Rachel, surviving her. This child also died on the 3d of March, 1817. Jane, who was the eldest of the three children of Joseph Sisom, was the only one surviving on the 3d of March, 1817. She intermarried with Samuel Vanschuyver in 1815, and died on the 4th

[Wright *v.* Wood.]

of October, 1841; her husband having previously died on the 23d of August, 1839. Jane Vanschuyver left issue eight children, to wit: Jane Anna, John, Wesley, Mary F., Margaret, Rebecca, Charles, and Ellen, who by several deeds of conveyances executed in December, 1846, and January, 1847, and duly recorded, conveyed the land in dispute to William Wood, the plaintiff, in fee. On the trial, the plaintiff rested his claim on two different and distinct titles. He claimed the entire tract of 164 acres on the ground that the title vested in Jane Vanschuyver by descent as the only surviving heir of John Sisom and Rachel Swift the younger. If he failed in this, he then claimed an undivided third part, which had been devised to Jane Vanschuyver by the will of John Sisom at the death of her father, Joseph Sisom.

The defendant, in addition to the claim under the deed from William Sisom and wife and Martha Toombs, resisted on two grounds. First, that Jane Vanschuyver, under *whose heirs* the plaintiff claimed, was born before her parent's marriage; and secondly, even if legitimate, that she and her husband had, in 1821, conveyed all their title and interest in this tract of land to Joseph Hulme, under whom the defendant claimed title. As to the plaintiff's right to recover an undivided third, the defendant admitted, that whether Jane were legitimate or not, the true construction of the will of John Sisom, included *her* in the devise to the children of Joseph; and that under that will, she was entitled to one undivided third part, such being the clear intention of the testator. But he contended, that by the deed to Hulme, she and her husband had in express terms conveyed to him in fee this undivided third, as well as any greater interest which they might have in the premises.

The deed of Vanschuyver and wife to Hulme, although acknowledged, had *not been recorded.* How far *the plaintiff* was to be affected by this unrecorded deed, under the circumstances given in evidence, became the principal question in the investigation of this branch of the case, and one on which it was finally ruled by the Court.

On the trial the plaintiff gave in evidence as follows:—

The will of John Sisom, containing the foregoing extract, dated 26th of December, 1797, and proved 27th of February, 1799.

Depositions of sundry witnesses taken at Rochester, in the state of New York, under a commission directed to Royal Chamberlain and Charles H. Clark or either of them, were offered. The defendant objected to the reading of these depositions in evidence on the ground,

1. That it did not appear that they were taken before the commissioners, or either of them, to whom the commission was directed.

2. That some of the depositions were taken in the spring of the year after the commission issued, and others in the subsequent fall, after an interval of about six months.

[Wright *v.* Wood.]

3. That it did not appear that the commissioners returned the commission under their seals.

The rule for the commission was entered on the 24th of November, 1852, and interrogatories filed on the same day; of which notice was given to the defendant. The depositions were taken at three different periods, to wit:—February 17th, 1853, November 24th, 1853, and November 26th, 1853. The following memorandum is prefixed to the depositions taken on the 26th of November, 1853: "Depositions of witnesses produced, sworn, and examined on the 26th day of November, in the year of our Lord 1853, at the house of Nehemiah Osburn, in the city of Rochester, in the county of Monroe and state of New York, by virtue of a commission issuing from the Court of Common Pleas of the county of Bucks, in the Commonwealth of Pennsylvania, to Royal Chamberlain and Charles H. Clark, Esquires, directed for the examination of witnesses in a certain cause depending in said Court, wherein William Wood is plaintiff, and Henry Compton and Robert Wright are defendants."

Then follow the interrogatories and answers, and at the end thereof is the signature of the witness, with the words "Charles H. Clark, Commissioner," opposite thereto. At the foot of each page are also the words "Charles H. Clark, Commissioner." The depositions taken on the 26th of November, differ only in one particular from the form used in taking the depositions on the 24th of November, and the 17th of February, 1853; and that is, instead of saying "*at the house of Nehemiah Osburn,*" the words in the others are, "*at the office of Charles H. Clark.*"

The following is the return made of the commission:—"The execution of this commission appears in a certain schedule hereunto annexed." (Signed) CHARLES H. CLARK, Commissioner.

There was no seal affixed to the name of Charles H. Clark, in any part of the proceedings. They were enclosed in an envelope, addressed to the prothonotary, sealed in the ordinary manner of sealing letters with wax; and on one side of this letter seal, were the words *Charles H.*; and on the other *Clark, Com'r.*

The Court overruled the objections, admitted the depositions, and at the request of defendant sealed a bill of exceptions.

Depositions were read to prove the parentage of Jane Sisom, and her marriage to Samuel Vanschuyver, and their children, and the death of the parents. Also that Samuel Vanschuyver and wife had possession of the land in dispute for five years after their marriage. They removed to New York in 1823, and in 1837 to Canada, where they died.

In reply to the 10th interrogatory, as to whether William Wood, the plaintiff, entered into possession of the premises in 1849, *James E. Squires* deposed that William Wood gave him a power of attorney, dated March 16, 1847, which was produced, autho-

[Wright *v.* Wood.]

rizing him to take possession of the premises, to employ attorneys, and to lease. This power of attorney had two subscribing witnesses. *It was read.* Squires proceeded to state that in March, 1847, he went to Bucks county to take possession, and while there, on the 29th of March, he executed a power of attorney to Alonson Anson. It was produced, and purported to authorize Anson to take possession of the land in question. This was executed in the presence of *two subscribing witnesses.* This power of attorney to Anson was offered and was objected to, on the ground that the subscribing witnesses were not called, or any proof given of their handwriting if dead or out of the jurisdiction of the Court. The objection was overruled, on the ground that it was direct proof by the party who did the act.

There was then given in evidence a lease from Squires to Anson for one year, dated March 29, 1817.

There were then given in evidence three deeds from children of Jane Vanschuyver to William Wood, the plaintiff, one dated December 1, 1846, one dated July 3, 1847, and a third dated July 27, 1847.

The plaintiff's counsel then rested.

On part of *defendant* evidence was given as to the illegitimacy of Jane Vanschuyver, formerly Jane Sisom.

Also offered in corroboration of the evidence as to her illegitimacy, an Act from the *Pamphlet Laws* of Pennsylvania for 1816–17; viz., An Act *legitimating* Jane Vanschuyver.

This was rejected.

On part of the *defendant* various deeds and legal proceedings, &c., were given in evidence to show title in him. The first was a deed by William Sisom and wife, and Martha Toombs, to William F. Swift in fee, for 164 acres (the tract in dispute),—dated 17th of March, 1818, acknowledged same day, and recorded April 16, 1818. This deed contains the following recital: "They, the said William Sisom and Martha Toombs, being heirs at law of Rachel Swift, daughter of William F. Swift and Rachel his wife, late Rachel Sisom, who was a granddaughter of John Sisom, and one of the children of Joseph Sisom, deceased." William Sisom and Martha Toombs, grantors, were brother and sister of Joseph Sisom, and as next of kin would inherit the shares of John and Rachel Sisom, if Jane were illegitimate.

Deed, *Samuel Vanschuyver and Jane his wife to Joseph Hulme* in fee, dated April 2d, 1821, and acknowledged in the same year, *but not recorded.* Consideration, $2000. This deed conveyed to Hulme and his heirs, "all that the one undivided third part or whatever other or greater interest or claim they, the said Samuel Vanschuyver and Jane his wife, in right of the said Jane or otherwise, have or *make of* in and to" the tract of 164 acres now in dispute.

[Wright *v.* Wood.]

Deed of assignment by Joseph Hulme to Farmers' Bank of Bucks county, dated July 5, 1821. Also deed of Farmers' Bank to *James Wright*, dated April 1, 1825. Deed by administrators of estate of *James* Wright to *James H. Wright.* Also deed by the administrators of estate of James H. Wright to *William Osmond*, dated 31st March, 1842, recorded in February, 1848, on sale confirmed by Orphans' Court in March, 1838. Also deed by the sheriff to *Robert Wright*, the defendant, dated November 9, 1846, sold under execution on judgment against *William Osmond.* The sale took place on 21st October, 1846.

Evidence was offered to prove that from 1821 till the spring of 1842 possession had accompanied the conveyances.

It appeared, as before stated, that the land had been sold by the administrators of the estate of James H. Wright to *William Osmond*, in March, 1838, by order of Orphans' Court. When the deed was about to be made, difficulty was made as to the title—it being alleged that certain claims of dower existed, and that the estate of Wright was not settled. The execution of the deed was postponed; Osmond paid to the administrators $1000 on account, and took possession on 1st April, 1838, and continued till 31st March, 1842, when he removed from it, and refused compliance with the terms of sale. Suit was afterwards brought in favor of the administrators against Osmond, and judgment obtained against him at April Term, 1846, for above $8000.

In the meanwhile, viz., on 1st April, 1842, one *Jonathan Hellings* took possession without leave from either the administrators or Osmond, and he remained on the land till the last day of March, 1847.

It was stated that *Osmond* admitted that he had not heard of the claim of Vanschuyver's heirs.

It was alleged that there was some evidence of actual notice by the defendant of the claim of the Vanschuyver claimants to be found in the testimony of *Jonathan Hellings*, who testified: I lived on this farm: went on in spring, 1842, and went off last day of March, 1847. I held under no one. I took possession on my own hook. No one in possession when I went in. I applied to Robert Wright for permission to go on the farm. He said he would have nothing to do with the renting of it, I should go and see Nathan Hellings, the other administrator. I did, and he said he would have nothing to do with it. I did not go to Osmond. Nobody made any effort to put me out during those five years.

Cross-examined: Am son of Jesse Hellings. He called on Osmond at my instance. The reason the administrators gave for not renting to me, was that they had sold it to Osmond, and he had taken possession of it, and they would have nothing to do with the renting of it. This was I think about two weeks before the 1st of April, 1842. I did not take possession of this property under any

[Wright *v.* Wood.]

claim I had to it.   Did not go there at the instance of any of the heirs or alienees of Vanschuyver; they had no knowledge of my being there till the fall before the sale to Robert Wright.

He further testified that Squires, the person who afterwards, in March, 1837, obtained the power of attorney from William Wood, the plaintiff, called upon him the fall before the sale to Wright the defendant, and a year or more before he, Hellings, left the place. He asked me about the place, and how I came there.   I said I did not rent of anybody, that the place was in dispute between Osmond and J. H. Wright's estate.   Did not tell him anything else I know of now.   I don't know if I gave particulars of the dispute.   He did not say much—was there but a few minutes.   He said the place belonged to the Vanschuyver family.   He talked as if he was agent of the Vanschuyver heirs.   I don't recollect that I said anything about suits in this Court.   About a year before the sale, a man, who I afterwards learned was named Anson, was there, and asked me about the place, and I told him I had moved there, but did not rent from anybody.·

I paid dower to the widow of James Wright while I was in possession of the land.   I expect I told him what I did to Squires about the dispute between Osmond and Wright's administrators, if I told him anything about it; which of course I did if he asked of me about it.

Some evidence was also offered to show that *Anson* took possession of the farm on 31st March, 1847, the day when Hellings left, and in a day or two afterwards was ejected by the defendant.

On part of the *plaintiff* was given in evidence an ejectment to August Term, 1819, in favor of William F. Swift against *Samuel Vanschuyver*, for the same premises, in which, on May 29, 1820, verdict was rendered for the plaintiff for the undivided two-thirds of the premises, and for the defendant for the residue.   Swift claimed under the deed from William Sisom and wife and Martha Toombs, dated in March, 1818, before referred to.   The grantors therein claimed on the ground that Jane Vanschuyver was illegitimate. After this recovery Samuel and Jane Vanschuyver, viz., in 1821, conveyed all their right and title in the land to Joseph Hulme, as before stated—the deed being left *unrecorded*.

SMYSER, President J., charged the jury elaborately; and on December 9, 1853, verdict was rendered for the *plaintiff* for the undivided one-third part of the premises mentioned in the writ; and for *defendant* for the undivided two-third parts of the said premises; thus finding that Jane Vanschuyver was *illegitimate*, and therefore was entitled to but one-third of the estate by virtue of the devise; and that the plaintiff had not actual notice of the prior unrecorded deed of the defendant.

It was assigned for error,—1. The Court erred in admitting in

[Wright v. Wood.]

evidence the depositions taken under the commission. 2. In admitting in evidence the power of attorney from James E. Squires to Alonson Anson, dated 29th of March, 1847, referred to in the deposition of the said James E. Squires. 3. In refusing to receive in evidence the Act of Assembly, with the preamble thereto prefixed, passed by the legislature of Pennsylvania on the 13th of March, 1817, conferring the rights of children born in lawful wedlock on Jane Vanschuyver, as contained in the Pamphlet Laws of the session of 1816–17. 4. In charging the jury as follows: "As we can see nothing which ought to affect the plaintiff with notice on either ground, we think the plaintiff stands on the ground of a *bonâ fide* purchaser without notice, and as such is entitled to your verdict for one undivided third or the whole of the premises demanded in the writ, as the jury shall determine the question as to Jane Vanschuyver's legitimacy." 5. In not charging the jury that under the evidence in the case the unrecorded deed of Vanschuyver and wife to Hulme, did not postpone the defendant's title to that of the plaintiff's. 6. In not submitting to the jury for their determination all the facts bearing on the question, whether Hellings' possession was "in subordination" to all claiming title through Hulme, or whether he was "a mere intruder" "in privity with no person and no title." 7. In charging that Wood the plaintiff was a *bonâ fide* purchaser, for value.

*Ross*, for plaintiff in error.—There was no certificate stating that the witnesses were sworn and examined by the commissioners or either of them, or that either of them was present when the witness was examined, and his answers reduced to writing. It is not stated in the caption that the depositions were taken by them, or in their presence. This should have been distinctly stated: 4 *W. & Ser.* 113. The signature of Clark is without date.

2. That the power of attorney to Anson should have been proved by a subscribing witness, reference was made to 1 *Starkie* 371; 1 *Greenleaf's Ev.* § 569; 6 *Bin.* 16; 5 *Ser. & R.* 314; 9 *Barr* 441; *Doug.* 216; 4 *East* 53, Call v. Dunning; 3 *Johns.* 477; 9 *Barr* 441; 5 *Watts* 536; 2 *Ser. & R.* 44; 1 *Star. Ev.* 380.

3. The Pamphlet Laws, printed by the authority of the state, are entitled to the same credit as exemplified copies of an Act, whether the law is private or public: 1 *Greenleaf's Ev.* § 480; 6 *Bin.* 321; 2 *W. & Ser.* 159.

As to the 4th, 5th, and 6th assignments, it was contended that Wood had either actual or legal notice of the conveyance by Vanschuyver and wife to Hulme, in 1821. Whatever is sufficient to put a party on inquiry amounts in equity to notice: 1 *Atk.* 490; 1 *Sto. Eq.* § 400; 1 *John. Ch.* 267; *Sug. on Vend.* 743–4. Possession of land is sufficient to put a purchaser on inquiry, and to amount to constructive notice: 16 *Ves.* 249; 2 *Ves. Jr.* 440; 2

[Wright *v.* Wood.]

*Sch. & Lef.* 599; 1 *Meriv.* 282; 7 *Watts* 387; 7 *Watts* 276, Jacques *v.* Weeks; 1 *Whar.* 303; 4 *Id.* 259; 1 *Barr* 470. One qualification to the doctrine of notice from possession, is where the title which the party has put on record is consistent with his possession: 6 *Ser. & R.* 184; 7 *Watts* 382. It was contended that the possession of Hellings was such as to put Wood on inquiry. Though he were a mere *intruder*, it was said that he possessed such information as would have led the plaintiff to a discovery of the claim of defendant. If the plaintiff had inquired of Hellings, he would have found that he was in possession not under the *heirs* of Jane Vanschuyver, and that Hellings could have told him that the land had been sold to Osmond under an order of Orphans' Court, as the property of James H. Wright; and that on the 21st October, 1846, about six weeks before Wood obtained his title, the sheriff had, *on the premises*, made sale of this land to Wright, the defendant, under the execution against Osmond. Hellings paid dower charged on the land to the widow of James Wright, deceased. He held the possession in subordination to the title under which the defendant claims.

Further; from 1821, when Vanschuyver and wife conveyed to Hulme, till 1842, when Hellings took possession, the land was in the possession of the grantees respectively. None of the Vanschuyvers had been in possession of it from 1821 till the conveyance to Wood, the plaintiff, in 1847, a period of 26 years. Nothing but the coverture of Jane Vanschuyver prevented the operation of the statute of limitations.

4. It was further contended, that the Orphans' Court and sheriff's sale of this land amounted to notice to Wood. The doctrine of *lis pendens* is not constructive notice of a prior unregistered deed; and the suits between Wright's administrators and Osmond had been prosecuted to judgment *before* the purchase by Wood (3 *Atk.* 391); yet it was suggested whether *judicial sales* do not place a purchaser in a different position than a suit pending: 10 *Watts* 46, and 5 *Id.* 77, 14 *Ser. & R.* 118. The sale in 1846 under the judgment against Osmond was held on 21st Oct., 1846, and the deed was acknowledged on 9th Nov., 1846; and on the 1st Dec., 1846, two of the Vanschuyvers conveyed to Wood, and others conveyed to him on 21st Dec., 1846, and on 3d Jan., 1847. The sheriff's sale was held at the time the plaintiff was about to purchase, and it was held on the premises. It was said, that, at all events, the jury would have had the right to infer knowledge by Wood from these facts, which should have been submitted to the jury.

*Lear*, with whom was *Du Bois*, for defendant in error.—The power of attorney to Anson was between strangers to this suit; and the proof of it was by the party who executed it. It was

[Wright v. Wood.]

offered to show that Anson, as attorney of Wood, took possession of the premises in March, 1847, under his deed, and this was not material in the case. Proof by subscribing witnesses is material only when the instrument has a direct bearing on the case, not collateral to it.

Though a private Act of Assembly may be evidence for some purposes, it is not so clear that it is receivable to affect the rights of the person, unless he was privy to its passage.

As to the question of *notice*. To be effective, notice should be clearly proved: 8 *Ser. & R.* 496. The only possession at the time of Wood's purchase and for several years before was that of Hellings. He did not hold under Wright, the defendant, or any person under whom Wright claimed. He was a mere intruder. The law formerly was that notice of a *tenancy* will not affect a purchaser with constructive notice of the lessor's title: 2 *Sugden* 293; but it is now settled that possession of *a tenant* is notice of his actual interest whether as lessee or purchaser: 7 *Watts* 382, Woods v. Farmere. But the possession of *an intruder* is evidence of *his* interest in the premises and no more: 6 *W. & Ser.* 469, Boggs v. Varner. If Hellings was tenant of no one, he was not the agent of any one, and it was said that the information derived from him would have been of the character of common rumor, which would have been insufficient: 2 *Watts* 78; 7 *Id.* 167. It was further said that before Wood could be affected with notice of the unrecorded deed, it should have been shown that Hellings possessed requisite information and that he would have communicated it. Knowledge of the possession has not the effect of visiting the purchaser with every fact and circumstance which he might have learned by making inquiry of the person in possession: 1 *Barr* 474, Hood v. Fahnestock. Hellings did not rent of any one, and there was no connexion between his possession and the unrecorded deed.

There was no evidence of actual notice by Wood of the sheriff's sale in 1846. Besides, it may have been that the right of Osmond was only to two-thirds of the premises, which would have been consistent with the purchase of the other third, for which alone the plaintiff obtained a verdict. The deed to Osmond was left for record by Wright himself in 1848, in order to complete the chain of title to him, after Wood had bought and had his deeds recorded, the deed to Osmond never having been delivered to him.

A *bonâ fide* purchaser without notice is not to be affected by the mere circumstance that the vendor has been out of possession for many years: 2 *Sugden* 293.

The opinion of the Court was delivered, May 16, by
KNOX, J.—There is no force in the objection made to the recep-

[Wright *v.* Wood.]

tion of the depositions taken under a commission issued to Chamberlain Clark of Rochester, New York.

The commission was joint and several, and the return shows that it was executed by Clark, one of the commissioners, and regularly returned in an envelope, sealed with his seal as commissioner. The commission authorized Clark to take the testimony, and he certifies that the witnesses were produced, sworn, and examined by virtue of the commission. This is all that the law requires.

The power of attorney from Squires to Anson was properly admitted, without proof of its execution by the subscribing witnesses. It was not the instrument upon which the suit was founded, and Wright, the defendant below, was in no wise connected with it. It was offered solely for the purpose of showing that the possession of Anson was under Wood, and having been proved by one of the parties to it, the rule which requires proof by subscribing witnesses was inapplicable. A grantor is a competent witness to prove that he had executed a particular deed, and it is not necessary to call the subscribing witness: Mix *v.* Smith, 7 *Barr* 75.

It is conceded that the rejection of the Act of Assembly as evidence of the facts, recited in the preamble, did no injury to the plaintiff in error, as the fact sought to be thus proved was found in his favor by the jury from other evidence.

We come now to the question of notice.

Both parties claimed under Jane Vanschuyver. The deed from which the defendant below deduced his title, was prior in point of time to that of the plaintiff from the heirs at law of defendant's grantor. It had never been recorded, and thus it became essential to prove that the plaintiff had either actual or constructive notice of its existence. The charge of the President of the Common Pleas upon this branch of the case, contains an elaborate review of all the evidence relied upon to prove notice of the defendant's title. Without examining it in detail, it is sufficient to say that the effort to show actual notice was a failure. It would have been clearly erroneous had the jury been permitted to find actual notice from the communication made by Hellings to Squires and Anson.

As to constructive notice. The possession of one either in person or by his tenant is notice of his unrecorded title; but the possession of an intruder cannot be held to be notice of the title of a stranger. The evidence was clear that the possession of Hellings had no connexion whatever with the title under which the defendant claimed. It is barely possible that an inquiry of Hellings would have elicited some information in regard to the claim of Wright. A mere possibility will not suffice to obviate a difficulty occasioned by the neglect to comply with the recording acts.

A judicial sale of one's interest in a tract of land, unless the fact

[Wright *v.* Wood.]

is actually made known to the person sought to be affected with notice, proves nothing. Neither is there any efficacy in a possession which had terminated long before the negotiation was commenced which led to the purchase by the plaintiff.

We agree with the Court below that there was no evidence in the case which established actual or constructive notice to Wood, of the unrecorded deed from Vanschuyver and wife to Joseph Hulme.

The 7th assignment, viz. "The Court erred in charging that Wood, the plaintiff, was a *bonâ fide* purchaser for value," is frankly admitted by the counsel to raise a point not made below, and we cannot permit it to be made here. No objection was made to the character of the evidence, which was the receipt at the foot of the deed, proving payment of the consideration-money. Upon the contrary, the case was put both by the Court and counsel upon the question, whether Wood had received notice, not whether he was entitled to receive it; even if we were of the opinion that this point was of significance, we would not notice it.

The 8th assignment is abandoned.

Judgment affirmed.