THE INTERNATIONAL HARVESTER COMPANY OF AMERICA,
*Appellant*, v. BENJAMIN F. MYERS *et al., Appellees.*

No. 17,453.

SYLLABUS BY THE COURT.

1. MORTGAGE—*Record Title in Mortgagor—Equitable Owners in
Possession—Notice to Mortgagee.* Among the many facts
shown and found by the court were the following:  Two
minor sons rented a farm of their father, adjoining the home
place.  Later they, with an elder brother, bought it and con-
tinued to work it and improve it, they and their mother still
living on the home place, the parents having been divorced.
The deed was taken in the name of the elder brother, who did
not work the land, but went into business in another county.
The deed was recorded.  He used the land as a basis of credit
and later mortgaged it to secure a mercantile debt.  The
mortgagor's agent inquired of him as to possession and was
told that no one lived on the place but that the two brothers
rented it.  An examination of the records by the agent dis-
closed the record title in the mortgagor.  In the meantime
the two brothers had come of age and had worked and im-
proved the land, asserting that each owned a one-third interest
therein, and this was generally understood in the neighbor-
hood; they were ignorant of their brother's use of the land
to obtain credit and of his execution of the mortgage.  That
ordinary diligence by way of inquiry in the neighborhood or
of either of the brothers in possession would have revealed
their claim but that no such inquiry was made.  The court
adjudged that the brothers, William and Henry, held their
interests in the land unaffected by the mortgage of plaintiff.
*Held*, not error.

2. EQUITABLE TITLE—*Possession — Claim of Ownership — Evi-
dence.* When the possession and use of the land by the two
brothers had been shown it was competent to prove the neigh-
borhood notoriety of their claim of ownership.

Appeal from Mitchell district court.  Opinion filed
February 10, 1912.  Affirmed.

*Park B. Pulsifer,* and *Charles L. Hunt,* for the ap-
pellant.

*Frank A. Lutz, A. E. Jordan,* and *J. E. Tice,* for the
appellees.

32—86 KAN.

The opinion of the court was delivered by

WEST, J.: This case involves the sole question, whether a mortgagee is entitled to a lien upon the land, or whether two brothers of the mortgagor without any record title should prevail. Joseph Myers owned a farm, on which was located the family residence, and across the road from which was the land in question. Prior to 1901 Joseph Myers and his wife were divorced, and in the division of the property she became the owner of the home place and he retained the land across the road. In 1901 a son, Benjamin, then of age, was engaged in business at Beloit. William and Henry, two minor brothers, during that and the following year farmed the land as tenants of their father, and also farmed the land of their mother, where they lived. In September, 1903, Joseph Myers sold to the three sons, Benjamin, William and Henry, this land, on which there was a mortgage of $800, the deed being taken by Benjamin, this being done at the father's instance, thinking that the mortgage could be more easily taken care of than if the deed should run to the three. William and Benjamin learned of this arrangement soon afterwards, and made no objections. When the mortgage fell due a new one was executed by Benjamin, one of the other brothers then being of age and the other a minor. This mortgage was duly recorded, and the proceeds used to pay off the prior mortgage and for improvements on the land. The three sons were to pay their father for the land in such sums and at such times as he should demand. The deed to Benjamin was recorded September 18, 1903. William and Henry continued to work the land. In the spring of 1907 Benjamin went into partnership with a man named James, one place of business being at Delphos and another at Minneapolis, buying goods of the International Harvester Company and of Parlin & Orrendoff Company. Benjamin represented that he was the owner of the

land, and used it as a basis for obtaining credit, and afterwards, on being pressed for payment, he and his wife executed the mortgage now in question, the plaintiff's credit man having relied on his statements as to owning the land and believing the same to be true. Before executing the mortgage Benjamin told plaintiff's agent that no one was living on the land, but that his brothers William and Henry were renting it. When the mortgage was taken the records were examined and nothing found affecting the land except the $1000 mortgage already mentioned. Plaintiff's mortgage was executed January 20, 1908, and recorded the following day. William and Henry did not learn of the mortgage until December, 1908, and had not been aware that their brother had been using the land as a basis of credit, or claimed to own it, or that he had mortgaged it, and had but little knowledge concerning the business and partnership in which he was interested. It was generally understood in the neighborhood that each of the brothers owned one-third of the land, but no inquiry was made there by the mortgagee. The mother lived on the home place, as did William and Henry, but improvements were made on the mortgaged land from time to time by way of sheds, corrals, pens and fences, including a hog-tight wire fence around the entire tract. Considerable stock was raised, and there were about 50 acres of alfalfa, 65 or 70 acres of pasture, the remainder being plowed land. By January, 1908, the purchase price to the father had been fully paid. As between the three brothers there appeared to be no friction or misunderstanding as to the ownership or management of the land or the proceeds therefrom. When the land was purchased from the father William was nineteen years old and Henry past twenty. Among the fifty-one findings of fact, the latter portion of the fifteenth is that "at all times William and Henry have claimed to own each an undivided one-third interest in the land, and their possession of it has been open,

notorious, actual and exclusive, and as such, has been
well known throughout the neighborhood in which the
land is situated ever since the deed was executed by
their father, Joseph M. Myers." The forty-eighth is
to the effect that there was no visible change in the
general character of the business carried on upon the
land or the occupancy thereof after the deed to Benja-
min by the father, except that after the deed was made
William and Henry openly exercised full and complete
dominion, made lasting and valuable improvements,
claimed to be owners with Benjamin, bought and sold
stock, increased and transacted the business of the farm
as though they were actually owners, until it became
a matter of general notoriety all over the neighborhood
that they claimed to own the place in common with
their brother. The fifty-first finding was:

"The occupancy of the land by William and Henry
Myers was by farming it as above described, and they
never lived on the place."

It was also found that the agents of plaintiff made no
effort, other than to ask Benjamin, to ascertain the
extent of William and Henry's interest; that the land
was continuously listed for taxation in the name of
Benjamin, and from 1903 to 1906 the taxes were paid
by Benjamin, the mother or the father, as were the
taxes for 1908 and the first half of 1909, those for 1907
and the last half of 1909 being paid by Henry; that had
the agents of plaintiff made inquiry in the neighbor-
hood they would have learned of William and Henry's
claim of ownership, and if they had exercised ordinary
diligence and made reasonable inquiry they would have
learned of such claim.

The plaintiff insists that, having been informed by
Benjamin that no one was living on the land, but that
his two brothers were renting it, and having examined
the records and finding nothing to indicate that Ben-
jamin was not the full owner, the defendants can not

defeat its mortgage lien unless their possession was not only open, notorious and exclusive, but also unambiguous and unequivocal; while the defendants claim that, being told that these brothers were farming the land, it was the mortgagee's duty to ascertain by inquiry whether they were tenants in fact or had some other or greater rights therein.

The case has been thoroughly briefed and argued and many authorities are presented by each side, and almost any possible view which might be taken would find support in numerous decisions found in the books. Narrowed down, the real question is this: Did the law require plaintiff, when advised that William and Henry were working the land as tenants of Benjamin, to inquire into the truth of this statement and use reasonable diligence to ascertain the real facts?

Both parties refer to numerous decisions of this court in support of their contentions, and reference to those most nearly in point will be made. In *Johnson v. Clark*, 18 Kan. 157, an undivided interest in land which had been held as partnership property was purchased at an administrator's sale, and the equitable interest of the surviving partner was purchased at private sale, and the land conveyed by the purchaser by warranty deed, the grantee taking possession and making valuable improvements, the deeds being placed of record. It was held that the purchaser buying of the sole heir at law of the deceased partner was charged with notice of whatever claim the possessor asserted up to the date of the purchase, whether legal or equitable. In the opinion it was said:

"It is well established that open, notorious, unequivocal and exclusive possession of real estate under an apparent claim of ownership is notice to the world of whatever claim the possessor asserts, whether such claim is legal or equitable in its nature. Under these circumstances it was incumbent upon the plaintiff to inquire. Inquiry would inevitably have led him to knowledge of Clark's possession. This was notorious.

Having ascertained the fact of Clark's possession, he was bound to pursue his inquiry until he ascertained the nature of the possessor's claim. Having these means of knowledge at his command, and failing to use them, the law treats the plaintiff precisely as though he had used them and learned all that might have been ascertained therefrom. And therefore the plaintiff, upon the facts in the case, is held by the law to have had, at the date of his purchase, full knowledge of Boyd's equitable interest in the land at the death of Likins, and to all of which interest Clark succeeded by his purchase from the grantee of Boyd." (p. 164.)

In *School District v. Taylor,* 19 Kan. 287, it was held that a purchaser of land must take notice of the rights of a school district which had bought one acre thereof and built a schoolhouse thereon which it had occupied without having the deed recorded. In the opinion it was said:

'"The defendant was in the possession of said land when the plaintiff's equities were created. And this possession was actual, open, visible, notorious and exclusive. The plaintiff had to shut his eyes not to see it. If he had looked at the land, he must have known it. If he had inquired of any person in the neighborhood, any man, woman, or even child of school age, he must have been informed concerning it. But it seems he made no such inquiries. He did not inquire of any person concerning adverse claims or interests except of his own mortgagor. We therefore think he can not claim to be an innocent and *bona fide* purchaser of his said mortgage interests." (p. 292.)

In *M'Neil v. Jordan,* 28 Kan. 7, the rule making open, notorious, unequivocal and exclusive possession under an apparent claim of ownership notice to the world was held not to apply to a vendor remaining in possession. It was said:

"The object of the law in holding possession constructive notice is to protect the possessor from the acts of others who do not derive their title from him, not to protect him against his own acts, not to protect him against his own deed." (p. 16.)

To the same effect are *Hockman v. Thuma,* 68 Kan. 519, 75 Pac. 486, and *Dotson v. Railway Co.,* 81 Kan. 816, 106 Pac. 1045. In *Deetjen v. Richter,* 33 Kan. 410, 6 Pac. 595, the owner of real estate holding under an unrecorded deed, in possession by tenant when a subsequent deed was executed under legal proceedings divesting the vendor of his supposed title, such subsequent purchaser having actual notice from the tenant that he is leasing the land, giving the name of the landlord, is held entitled to prevail over such subsequent purchaser who is held not to be a *bona fide* purchaser without notice.

Richter and his daughter had lived together upon the premises until the daughter was declared insane, there being no other members of the family. The plow land was leased to one Stober, who told the subsequent purchaser that he was renting from Richter. It was said:

"We do not understand the rule to be that a person must actually reside upon the land to make his possession notice; he may actually improve and cultivate it and perform open, notorious and decided acts of ownership over it without residing upon it. . . . There is some conflict in the authorities whether the possession of a tenant under a lease is notice simply of his tenancy or of his tenancy and also of his landlord's title. But 'there seems no good reason why, if it be admitted that possession is notice, or evidence of notice, there should be any modification of the rule that the possession by the tenant is the possession of his landlord. If the purchaser has followed up the suggestion which the possession of the premises by a third party implies, he will inquire of the actual occupant with the probability of learning that he holds as lessee of another. Inquiry can not safely stop here for the next step suggested by the circumstances would be to inquire of the landlord.' . . . Information which makes it the duty of a party to inquire, and shows where such an inquiry may be effectual, is notice of all the facts which might be thereby ascertained. No purchaser of real estate is at liberty to remain intentionally ignorant of facts relating to his purchase within his reach, where

the property is in the actual, open, visible, notorious and exclusive possesion of another, and then claim protection as an innocent purchaser. The presumption of law is, that upon inquiry he will ascertain the true state of the title." (pp. 414, 415.)

In *Sanford v. Weeks,* 38 Kan. 319, 16 Pac. 465, a person having an equitable title made improvements on the land consisting of the breaking of 13 or 14 acres, the fencing of the same, the quarrying and cording up of considerable rock and the partial construction of a lime kiln, no dwelling house being on the land and no one living thereon, and it was held that such improvements were not of themselves conclusive that the party making the same had open, notorious, unequivocal and exclusive possession as against a subsequent purchaser for value. There the purchasers inquired of the agents of the grantor and were informed that she was the owner of the premises; they also inquired of a responsible banker if they could rely upon the representations of these agents and were informed that they could. The court said:

"The only question really for our determination is whether there is sufficient evidence in the record to sustain the finding of the trial court that the Weekses had neither actual nor constructive notice before their purchase of the land that Sanford had, or claimed any interest therein." (p. 325.)

It was held that as the finding had been made upon conflicting evidence it could not be disturbed. Here the finding, well supported, is the other way. In *Gray v. Zellmer,* 66 Kan. 514, 72 Pac. 228, the general rule was announced that open and notorious possession of real estate is constructive notice to all the world of the rights of one in possession; that the doctrine of equitable estoppel does not operate in favor of one who has knowledge of another's rights, or who has convenient and available means of obtaining such knowledge. Koch purchased a quarter section of land for $560,

paying $60 cash and giving a mortgage for $500. With his consent the land was conveyed to Zellmer who was to hold the legal title until Koch should pay off the mortgage. Koch took and held open and notorious possession under claim of ownership and paid to his agent, Zellmer, the interest as it accrued and the principal in full, but Zellmer failed to transmit it all to the mortgagee. When the mortgage fell due Zellmer re-mortgaged to Ambler for $300 to use in paying off the first mortgage. Ambler trusted to the title as shown by the records, and made no inquiry of Koch who was in possession. Ambler assigned to plaintiff Gray, who had personal judgment against Zellmer but was refused foreclosure against Koch. This was affirmed. In the opinion it was said:

"One seeking to be informed as to the title of real estate can not safely limit his investigations to what is shown in the records of the county in which the land is situated. He must also inquire about, and take notice of, the rights of those who are in open and notorious possession of such real estate. It is a general rule that such possession is constructive notice to all the world of the rights of the one in possession. . . . It must be borne in mind that, while Koch was consenting that Zellmer should hold the title, he was at the same time asserting to all the world, by means of his possession, that he was the real owner of the property. . . . Nor does the principle apply that, where one of two equally innocent parties must suffer, he who has put it within the power of the wrongdoer to defraud must be the one to suffer, for here Koch by his possession was proclaiming to all the world his rights, and this notice was as puissant, at least, as was the record." (pp. 516, 517.)

In 13 L. R. A., n. s., 49, it was held by the supreme court of Minnesota in *Niles v. Cooper*, 98 Minn. 39, 107 N. W. 744, that actual possession is notice to all the world of the title and rights of the person in possession and of all facts connected therewith which reasonable inquiry would disclose, and that a purchaser

knowing the possession to be in a third person is chargeable with notice of such facts, and if he fails to make proper inquiry to ascertain the state of the title he is not a purchaser in good faith. To this decision there is an extended footnote covering the doctrine of notice by possession. Among the general rules found therein are the following:

"Possession of land is notice not only of the rights of the possessor . . . but also of all facts that would be developed if inquiry were made of the one in possession and a truthful response made." (p. 73.)

"The rule would seem to be universal that the occupation by tenant of lands is notice to subsequent purchasers and encumbrancers of his rights as such. . . . A purchaser of an estate in the possession of a tenant is bound to inquire by what right and under what agreement the tenant holds it. . . . He is not justified in assuming the possession of that person to be the possession of the vendor, but is bound to make inquiry of the occupant." (pp. 96, 97.)

"The rule of the English authorities, and apparently of the majority of the American courts, is that the possession of a tenant is notice to a purchaser of land occupied by the tenant, not only of his interest as tenant, but also of the whole actual interest he may have therein." (p. 98.)

At page 138 is found the following portion of the "conclusion":

"To buy land knowing that it does not belong to the vendor is fraudulent as against the real owner; and, since possession is a badge of ownership and title, willingness, or an offer, to sell by one not in possession is a suspicious circumstance which should lead the proposed purchaser to inquire as to the ownership of the title. This gives rise to the general rule that a purchaser or incumbrancer of land not in the possession of the vendor or the owner of the record title, with whom he is dealing, is charged with notice of all the interests, rights and equities which the person in possession may have in it, and that he takes it subject to such rights and equities. This rule is based upon the

idea that had the purchaser gone to the occupant and made inquiry as to his rights he would have obtained the desired information, and therefore he has constructive notice with reference to it; and it is generally deemed to be applicable whether the purchaser had knowledge of the possession of the third person or not, the possession, and not the knowledge of it, furnishing the foundation for the constructive notice."

In *Kirby v. Tallmadge,* 160 U. S. 379, Mrs. Tallmadge had purchased the lots in question, paying part cash, through one Miller, who took the title and executed notes, secured by deed of trust, for the deferred payments. She took possession and occupied them as her own, paying taxes, making improvements and payments on the debt. Miller afterwards conveyed to Mrs. Tallmadge, but before the deed was recorded Kirby's grantors contracted with the collateral heirs of Miller to get for them, on a contingent fee, what they could out of Miller's estate. A bill was filed praying for partition. The conveyance to Kirby was held void by the trial court, and this was affirmed by the supreme court. In the opinion it was held (quoting *Landes v. Brandt,* [51 U. S.] 10 How. 348, 375,) that:

"Open and notorious occupation and adverse holding by the first purchaser when the second deed is taken is in itself sufficient to warrant a jury or court in finding that the purchaser had evidence before him of a character to put him on inquiry as to what title the possession was held under; and that he, the subsequent purchaser, was bound by that title aside from all other evidence of such possession and holding." (p. 384.)

It was further stated that there are cases of occupation by some other person than the one holding the unrecorded deed which is no notice, and that the apparent possession by the head of a family is no notice of title in a mere boarder, lodger or subordinate member of a family. But attention was also called (160 U. S. 388) to *Phelan v. Brady,* 119 N. Y. 587, 23 N. E. 1109, holding that as Murphy, before executing the mortgage, had

conveyed to Mrs. Brady, who was in possession, and with her husband occupied two rooms in the building on the premises and leased the others to tenants, claiming to be the owner and collecting rent, her deed not being recorded—her actual possession was sufficient notice to defeat any claim of the mortgagee. As to Mrs. Tallmadge the court said:

"If there be any force at all in the general rule that the possession of another than the grantor puts the purchaser upon inquiry as to the nature of such possession, it applies with peculiar cogency to a case like the present, where the slightest inquiry either of the husband or of the wife would have revealed the actual facts. . . . It is clear that a purchase made under such circumstances does not clothe the vendee with the rights of a *bona fide* purchaser without notice." (160 U. S. 388, 389.)

(See, also, *Ramirez v. Smith*, 94 Tex. 184, 59 S. W. 258.)

The actual ownership had been freely expressed and was fully understood in the neighborhood, and very slight investigation and inquiry there would have disclosed the facts. The defendant's title was secret only so far as the records were concerned; otherwise it was open and known both by act and by assertion. As between the plaintiff and the mortgagor, the former had a perfect right to rely upon the representations of the latter, knowing that the records indicated him as the title holder; but as between the plaintiff and these defendants, it seems in full accord with reason and fairness to hold that instead of relying upon the statements of their absent brother, inquiry should have been made of them or their neighbors, which inquiry, according to the findings, involved only the exercise of ordinary diligence and would have cleared the situation.

Complaint is made that testimony as to reputed ownership of the land by the two brothers was admitted. Their possession having been otherwise established, the neighborhood notoriety of their claim was a proper

matter to show.    (1 Cyc. 1151; *Maxwell Land Grant Co. v. Dawson,* 151 U. S. 586.)    ·

In view of the facts and findings, and in accordance with the weight of judicial decision, we hold that the trial court's conclusion of law was correct; that the interest of William and Henry Myers is by them to be held unaffected by any claims of the plaintiff by virtue of its mortgage.

The judgment is affirmed.