674

No. 36,323

FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, as Receiver for Aetna Federal Savings and Loan Association, *Appellant*, v. D. F. URSCHEL, LESTER URSCHEL, and MARY URSCHEL, his wife, *Appellees.*

(157 P. 2d 805)

Opinion filed April 7, 1945.

*Floyd A. Sloan,* of Topeka, argued the cause, and *Roscoe King,* of Marion, *E. R. Sloan, W. Glenn Hamilton* and *Eldon R. Sloan,* all of Topeka, were on the briefs for the appellant.

*W. H. Carpenter,* of Marion, argued the cause, and *W. R. Carpenter,* of Marion, was on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: In this action the plaintiff sought to enjoin the defendants from interfering with its use of a stairway located in a building belonging to defendants and connected with the plaintiff's building by a door through the wall between such buildings.

The amended petition contained two counts. Summarized, the first was based on a written agreement the terms of which were alleged to have been known to the defendants granting the original owner of the building, now owned by plaintiff, the use of the stairway while the second alleged that plaintiff and its predecessors in title had used such stairway from the time the buildings were constructed until it was closed by the defendants in 1943 and had acquired title thereto by prescription.

Prior to the filing of their answer the defendants moved to require the plaintiff to elect on which of the two causes of action set forth in its amended petition it would rely. This motion was sustained by the trial court, whereupon plaintiff elected to rely upon its first cause of action. Issues were then joined and the cause proceeded to trial.

The evidence adduced by plaintiff in support of the cause of action on which it had elected to rely can be stated in substance as follows: In 1920 the owner of lot 412 on Main street in Florence, Kan., was H. J. Reverend and the owner of lots 414 and 416 on such street was Raymond Gear; lot 412 joined lot 414 on the south; during such year Gear erected a building on lot 414 and Reverend a building on lot 412; the Gear building was constructed for theatre purposes and had office rooms in the front part of the second floor; the Reverend building had a storeroom on the lower floor with office rooms and living quarters on the second floor; about the time the two buildings were constructed Gear and Reverend entered into a written agreement in connection with the building of the joint wall and its cost under the terms of which Reverend was granted the use of a stairway for a period of 99 years as a means of access to the rooms on the second floor of his building; pursuant to this agreement such stairway was constructed as a part of Gear's building along the south side of lot 414; this stairway led to the landing on the second floor where there was a hallway; on the south side of this hallway was a door which permitted entrance to the rooms on

the second floor of the Reverend building; such stairway was used to enter the upstairs rooms of the building to the south of lot 414; the written agreement was not recorded and had either been lost or destroyed.

In December, 1920, Gear by warranty deed conveyed the theatre property to D. F. Urschel and his wife but continued to occupy it under an agreement to repurchase; in 1922 he conveyed to the same parties by quitclaim deed for the purpose of disposing of his interest under the contract of purchase. Neither the warranty deed, the contract of purchase, nor the quitclaim deed, contained any exceptions or reservations.

Plaintiff's evidence further disclosed that about two and one-half years before institution of the present action D. F. Urschel closed and padlocked the stairway door.

While plaintiff in the presentation of its evidence made no effort to show, and now makes no claim, that D. F. Urschel and his wife at the time they obtained title to the theatre building by warranty deed from Gear, were ever advised by him, or for that matter by anyone else, of the fact an agreement had been entered into between Gear and Reverend with respect to the stairway, it did attempt to adduce evidence regarding how the wall was constructed and the manner in which such stairway was used prior to and at the time they purchased the real estate on which it was located. Gear testified as a witness for the plaintiff and the record discloses he was asked the following questions, to each of which objection was made by the defendants and sustained by the trial court:

"Q. Now, I will ask you another question: This wall that was built, that you say was built there, did that support your property on the north and also support the other property on the south?

. . . . . . . . . . . . . .

"Q. This wall that you have referred to, that you and Mr. Reverend built, was that built on the line between your property and the property of Mr. Reverend?

. . . . . . . . . . . . . .

"Q. Well, I will ask you: At the time you made this deed to Mr. Urschel, what use was being made of this stairway?"

After objection had been sustained to the three questions above quoted the plaintiff made the following offer of proof:

"We offer to prove, if Your Honor please, by this witness, as a part of the issues in this case, that after these buildings were completed and before Mr. Urschel got his deed on December first, this stairway was being used by the tenants of Mr. Reverend's building for going up and down to the upstairs,

to the second floor of that building. . . . . I also offer to show by this witness that Mr. Gear and Mr. Reverend shared jointly in the cost of the wall between those two buildings under this written contract."

Defendants objected to the proffered evidence on the ground it was incompetent, irrelevant and immaterial. This objection was also sustained.

The trial court's rulings on the evidence to which we have just referred were made after plaintiff's counsel had stated the sole purpose of the testimony sought to be elicited by his questions and the offer of proof made by him was to show that at the time D. F. Urschel and his wife acquired title to the property in question they had implied or actual notice of the fact such property was subject to the rights granted by the contract on which the plaintiff relied.

After the plaintiff had rested its cause, with the evidence in the state we have heretofore related, the defendants demurred thereto on the ground it failed to proved the first cause of action set forth in the amended petition or any cause of action against them. This demurrer was sustained. A motion for new trial was then filed. On its hearing the rejected evidence was presented in affidavit form. After it had been overruled judgment was rendered in favor of defendants. The appeal was from the judgment and from the order overruling the motion for a new trial, also from the order requiring the plaintiff to. elect.

Appellant concedes the record presents but three questions for appellate review and we shall limit our consideration to them as stated. They are in substance as follows: (1) Was the appellant entitled to submit its case on both counts of its petition when one count alleges a written easement and the other count title by prescription; (2) in proving implied or constructive notice of an easement, is evidence that it was in use at the time the appellees purchased the servient tenement admissible, and (3) was the evidence sufficient as against a demurrer?

With respect to the first question it must be admitted the rule, now so well established as to almost require no citation of authorities, is that under the doctrine of election of remedies one who comes into court with a petition containing causes of action predicated upon inconsistent theories may properly be required to elect upon which of the inconsistent positions so asserted by him he relies as a basis for the relief he seeks to obtain in his action. To here enter into an extended discussion of the principles underlying the rule or

attempt to relate the many circumstances and conditions under which it becomes applicable is wholly unnecessary and would only serve to unduly prolong this opinion. The rule is announced and the subject is exhaustively treated in the well-considered decision in *Taylor v. Robertson Petroleum Co.*, 156 Kan. 822, 137 P. 2d 150. To do more here than to say we reaffirm what was said there would indeed be superfluous. Numerous cases dealing with all phases of the subject can be found in the opinion of such decision, also in the opinion of the more recent case of *Davidson v. McKown*, 157 Kan. 217, 223, 139 P. 2d 421, and need not be cited.

As is stated in *Taylor v. Robertson Petroleum Co.*, supra, decision as to whether the doctrine applies must be determined by the factual situation to be found in each particular case. With that in mind we direct attention to allegations to be found in the petition. In the first cause of action appellant states that prior to the construction of the two buildings heretofore described Reverend and Gear entered into a written agreement by the terms of which Reverend, his heirs, successors and assigns, were granted the right and privilege to use the stairway in the Gear building for a period of 99 years and that pursuant to that agreement such stairway was so used until sometime in 1943 when it was padlocked by the appellees. In its second cause of action it made the allegations of his first cause of action, a part thereof, and then alleged that its use of the stairway, and that of its predecessors in title, had been adverse for more than fifteen years and until it was closed by the appellees.

Under allegations of such character can it be successfully urged that appellant based its two causes of action upon theories so consistent in their nature as to preclude application of the doctrine? For answer we turn to our decisions and general principles announced in well-recognized textbooks and legal treatises.

In 2 C. J. S. 624, § 80, 630, § 83 and 639, § 87, we find the following statement:

"The doctrine of prescription does not apply to cases in which possession is permissive, and title by prescription or limitation cannot be based upon a possession or use under permission or license from the owner. . . ." (§ 80.)

"Possession under a party wall privilege is not adverse, and joint use of a party wall, involving the right of use by either owner of the other's land for the purpose of sustaining the wall, is not adverse as respects the land so used, in the absence of a claim of title to the land in fee." (§ 83.)

"It has been broadly stated that possession must be hostile in its inception, and that a possession which is not in its origin made under claim of right of

ownership cannot ripen into title. This, however, does not mean that a possession originally nonhostile can never become adverse, but merely that a possession must be or become hostile in character to start the statute running. In other words, a successful claimant must show either a possession hostile in its inception or an amicable possession which subsequently became hostile." (§ 87.)

To the same effect is 17 Am. Jur. 974, § 63, and 978, § 67, wherein it is stated:

"Another important essential in the acquisition of a prescriptive right is that the use made of the easement claimed be adverse. Generally, the hostile and adverse character of the user necessary to establish an easement by prescription is the same as that which is necessary to establish title by adverse possession. If the enjoyment is consistent with the right of the owner of the tenement, it confers no right in opposition to such ownership. . . ." (§ 63.)

"User under an adverse claim of right is requisite to the acquisition of an easement by prescription. The rule is well settled that use by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription, since the user as of right, as distinguished from permissive user, is lacking. . . ." (§ 67.)

See, also, *Hester v. Sawyers*, 41 N. M. 497, 71 P. 2d 646, 112 A. L. R. 536, and cases therein cited, holding:

"If a use has its inception in permission, express or implied, it is stamped with such permissive character and will continue as such until a distinct and positive assertion of a right hostile to the owner is brought home to him by words or acts. (citing cases)" (p. 505.)

Likewise, 2 Thompson on Real Property, Perm. ed., 110, § 522, where it is said:

"Of course, if one enters as the tenant of another or holds under him by contract in any way, he cannot acquire any prescriptive right while he thus holds; nor will any portion of the time during which he thus holds be counted in making out the prescriptive right. . ."

Resort to our decisions reveals this court has always been in accord with the legal principles to which we have just referred.

In *Sexton v. Holt*, 91 Kan. 26, 136 Pac. 934, we held:

"Use under a license will not ripen into an easement by prescription, however long continued. Use according to permission to use is not adverse. To be adverse the use must be under a claim of right with the knowledge of the owner of the estate but without his consent." (Syl. ¶ 1.)

See, also *Finn v. Alexander*, 102 Kan. 607, 171 Pac. 602, where it was held:

"Occupancy of land in common with the owner, or with his consent and in recognition of his right, is not sufficient to constitute adverse possession." (Syl. ¶ 2.)

Also *Reitz v. Cooper*, 123 Kan. 755, 256 Pac. 813, holding:

"One who enters into possession of real property by permission, and whose possession is never adverse or hostile to the owner of the record title, cannot acquire title by adverse possession." (Syl. ¶ 5.)

To the same effect is *Park Construction R. & S. Corp. v. Emmett*, 145 Kan. 604, 66 P. 2d 379, where we decided that one seeking to establish rights in real estate could not rely on an oral agreement with the owner whereby he was in possession and at the same time claim title by adverse possession for the reason that such claims were too inconsistent to be maintained at the same time.

As has been heretofore indicated, appellant in the instant case did not contend in either of the causes of action set forth in its pleading that when its predecessor in interest first acquired his rights in the stairway, now claimed by the appellant, such rights included title to either the stairway or the land on which it was located. On the contrary, it alleged that those rights were to the use of such stairway for a term of 99 years under the provisions of an express contract with the then owner which granted him that privilege. Clearly one cannot recognize title in another and at the same time assert title in himself. We conclude the assertion of two such claims are inconsistent and cannot be successfully maintained in the same action. It follows the ruling of the trial court, in requiring the appellant to elect as to whether it would rely for recovery upon the contract under which it must necessarily recognize the title of appellees and their grantor, or upon prescription, which was predicated upon hostile and adverse possession of the property involved without recognition of their title, was proper and must be sustained.

Appellant's contention there was error in refusing to permit the introduction of the evidence offered by it in support of its cause presents a serious problem, the solution of which depends upon whether it is possible for one who has acquired a right or interest in real estate from its then owner, under an unrecorded instrument, to assert and maintain those rights even as against another who has subsequently purchased that real estate from such owner and obtained from him a warranty deed containing no reservations or exceptions or recognition of the grant theretofore made by him under the terms and provisions of the unrecorded instrument.

That such a right, title or interest, may be successfully asserted and maintained by one who is in the open and notorious possession of real estate as against the entire world, irrespective of subsequent

conveyances, is too well established in this jurisdiction to admit of dispute. (See *Greer v. Higgins,* 20 Kan. 420; *Harvester Co. v. Myers,* 86 Kan. 497, 121 Pac. 500; *Farmers State Bank v. St. Aubyn,* 120 Kan. 66, 242 Pac. 466 and *Haas v. Nemeth,* 139 Kan. 252, 31 P. 2d 6.)

Obviously, because of their very nature and character, the rights of an individual who claims an interest in real estate under terms of a contract such as is here relied on are subject to closer scrutiny and more difficult of determination than those of one who claims through possession which is not exclusive to himself. Nevertheless, the courts have held there are circumstances and conditions under which such an individual is protected against subsequent purchasers who seek to deprive him of rights so acquired.

The applicable general rule is to be found in 66 C. J. 1111 to 1115, incl., § 938. It reads:

"One who has constructive notice of an outstanding title or right is not a bona fide purchaser. It has been held that constructive notice rests upon strictly legal presumptions which are not allowed to be controverted, while implied notice arises from an inference of facts and is a form of actual notice. Regardless, however, of the technical distinction made by some courts between constructive notice and implied actual notice, it is a general rule that knowledge of such facts as ought to put a prudent man on inquiry as to the title charges a subsequent purchaser with notice not only of those facts which are actually known, but also of all the other facts which a reasonably diligent investigation would have ascertained, provided the inquiry becomes a duty, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding. But a purchaser is not deemed to have notice of matter which lies beyond the range of that inquiry and which that diligence might not disclose, and he may be a bona fide purchaser where an inquiry would not have shown defects in the title, or where, had inquiry been made, no knowledge or notice would actually have been received. There must be such a connection between the facts disclosed and the further facts to be discovered upon inquiry that the former may be said to furnish a reasonable and natural clue to the latter. In applying the rule, each case must be governed by its own peculiar circumstances."

When restricted to physical conditions giving notice of easements generally it is thus stated in 27 R. C. L. 729, § 493:

"The open use and enjoyment of an easement over land is constructive notice to a purchaser of the land, subject to the easement, of its existence and the rights of the owner of such easement where an inspection of the premises would readily reveal such physical facts as to put the purchaser on inquiry. Thus one who purchases land over which an irrigation ditch or canal is in operation takes subject to the rights of the owner of the ditch or canal; and where a private right of way over and across the land purchased is open

and visible and in use at the time of the purchase, this fact constitutes sufficient notice to the purchaser of the existence of the easement, as in case of a railway in actual operation. It has also been held that where a permanent building was erected on one lot, the upper stories of which could be reached only by stairs wholly on an adjoining lot, the purchaser of the latter lot, being bound to use his eyes, is affected with notice of the evident servitude existing over the one lot in favor of the other, and arising out of the permanent form in which the building had been constructed."

To the same effect is 17 Am. Jur. 1018, § 130, which reads:

"It has frequently been said that in order to affect the purchaser of the servient estate the easement must be one that is apparent as well as necessary and continuous, or the marks of the servitude must be open and visible. If the servitude cannot be discovered by an inspection of the premises, the purchaser is not charged with notice of its existence, except in so far as he may be charged with constructive notice under the recording laws. On the other hand, the proposition that a purchaser of real estate is charged with notice of an easement where the existence of the servitude is apparent upon an ordinary inspection of the premises is sound beyond question. Apparent easements have been defined as those which may be discovered upon reasonable inspection."

On the subject of requisites and sufficiency of the notice which will bind subsequent purchasers see 28 C. J. S. 712, where it is stated:

"Notice that the land is burdened with an easement may be imputed to the purchaser by a properly recorded instrument in which the easement is granted. Where an examination of his own claim of title would reveal the easement, the purchaser is bound.

"The law imputes to a purchaser such knowledge as he would have acquired by the exercise of ordinary diligence. Thus, where the easement is open and visible, the purchaser of the servient tenement will be charged with notice, although the easement was created by a grant which was never recorded. There should be such a connection between the use and the thing as to suggest to the purchaser that the one estate is servient to the other. The grantee is bound where a reasonably careful inspection of the premises would disclose the existence of the easement, or where the grantee has knowledge of facts sufficient to put a prudent buyer on inquiry. It is not necessary that the easement be in constant and uninterrupted use. The purchaser of property may assume that no easements are attached to the property purchased which are not of record except those which are open and visible."

See, also, *Calhoun v. Ozburn*, 186 Ga. 569, 572, where it was held:

"While it is the general rule that a bona fide purchaser of land without actual or constructive notice of the existence of an easement takes the title free of such a burden, and one buying land may ordinarily assume that there is no easement except such as may be shown of record or by open and visible indication on the land itself, yet a purchaser will be charged with notice of an easement where an inspection of the premises would have readily revealed

such physical facts as would have put him upon inquiry in the exercise of ordinary diligence."

Also, *Historic Estates v. United Paper Board Co.*, 21 N. Y. S. 2d 819, 823, where it was said:

"Whether or not the agreement between the defendant and Pine Needles Corporation created an easement in the strict sense of the term, it did establish rights enforceable between the original parties, and against a purchaser with notice. *Rochester Poster Advertising Co., Inc. v. Smithers,* 224 App. Div. 435, 231 N. Y. S. 315. The issue of notice must decide this case. A purchaser of property may assume that no easements are attached thereto which are not of record except those which are open and visible. There must be an apparent sign of servitude, something to suggest to the purchaser that one estate is servient to the other. *Butterworth v. Crawford,* 46 N. Y. 349, 7 Am. Rep. 352. Unless there is an apparent mark or sign which would indicate servitude upon inspection, or cause a prudent purchaser to make inquiry, the rule of constructive notice does not apply."

And our own case of *Jobling v. Tuttle,* 75 Kan. 351, 89 Pac. 669, holding:

"In order to furnish constructive notice of the existence of a servitude in lands there should be such a connection between the use and the thing used as to suggest to a purchaser that one estate is servient to the other. The servitude must be open, apparent and visible, so as to raise the presumption of notice, or the purchaser will not be bound, in the absence of actual notice." (Syl. ¶ 2.)

For other decisions dealing with the same subject see 41 A. L. R. Anno. 1442; 74 A. L. R. Anno. 1250 and Am. Dig. System, Vendor and Purchaser, Key No. 229.

Directing our attention now to the instant case it must be kept in mind, that under allegations of an amended petition charging appellees acquired their title not only with knowledge of the contract but knowledge also of the fact the stairway was being used by the owners of the building located on lot 412 for the purpose of ingress and egress to the second floor thereof, and admitted testimony that at the time the buildings were constructed a doorway was cut in the joint wall between the two buildings through which by use of the stairway Reverend and his tenants could gain entrance to the offices and rooms of the second floor of his building, the trial court refused to admit the evidence to which we have heretofore specifically referred even though at the time it was offered counsel for appellant had stated its sole purpose was to show implied or actual notice on the part of appellees.

We have in mind also the provisions of G. S. 1935, 67-223, which read:

"No such instrument [referring to instruments affecting real estate] in writing shall be valid, except between the parties thereto, *and such as have actual notice thereof*, until the same shall be deposited with the register of deeds for record." (Emphasis supplied.)

It is apparent appellees base their defense of the trial court's ruling on the interpretation they give the emphasized portion of the section of the statute just quoted. In their brief they state their position thus:

"Appellant finds itself in this condition, under the law: Having affirmatively, positively and definitely predicated a cause of action upon the terms of a written contract of which appellant plainly and directly alleges the Urschels had actual knowledge at the time they purchased the property, and excluded the grantees and their assigns named in the contract, contrary to the written provisions of said contract, and upon the trial of the case, being unable to prove such actual knowledge of the contract as alleged, appellant is now asking for permission from this Court to change the allegations of its first cause of action and show that although Urschels did not have any actual knowledge of the existence of this written contract and although the Urschels were innocent purchasers, appellants should be permitted to change its claims and the allegations of its amended petition and show that although Urschels had no actual knowledge of such a contract granting the use of the stairway to Reverend, nevertheless he did have notice that the stairway in question was being used by the public and that appellees acquiesced in the joint use of the stairway, . ."

From a factual standpoint the appellees' statement is incorrect in that it stated the appellant directly alleges the Urschels had "actual knowledge" of the written contract. The amended petition as we read it, both from the abstract and from the original which we have before us, used the phrase "had knowledge of the contract" and makes no use of the word "actual." It follows since the amended petition was not motioned that such phrase is sufficiently broad and comprehensive to include either actual, implied or constructive knowledge.

Appellees position is based upon an erroneous legal premise because this court has heretofore determined the meaning of the words "actual notice" as used in the statute contrary to their contention.

In *Faris v. Finnup*, 84 Kan. 122, 112 Pac. 407, we held:

"Under the statute providing that no conveyance of real estate shall be valid, except as between the parties and as to those who have actual notice, until it is deposited for record (Gen. Stat. 1909, § 1672), actual notice may be express when it consists of knowledge actually brought personally home, or it may be implied when it consists of knowledge of facts so informing that a reasonably cautious person would be led by them to the ultimate fact. In the latter case the known facts must be sufficiently specific to impose the duty

to investigate further, and they must furnish a natural clue to the ultimate fact." (Syl. ¶ 1.)

To the same effect is the later case of *Edwards v. Myers,* 127 Kan. 221, 273 Pac. 468, see, also, *Pope v. Nichols,* 61 Kan. 230, 59 Pac. 257.

In view of the authorities which we 'have quoted, and others to which we have referred, we conclude the trial court erred, particularly in view of counsel's statement its purpose was to show what was apparent and could have been seen by the appellees at the time they purchased the property in question, in refusing to permit the appellant to adduce evidence pertaining to the construction of the wall and the manner, circumstances and conditions, under which it and the stairway were being used at the time and prior thereto. It may be—and we do not attempt to pass upon it for it is not here and is initially for consideration and determination by the trial court—such evidence would not have been sufficient to establish implied notice of the rights of appellant in the stairway under its unrecorded contract. Be that as it may, it was entitled to have that evidence considered in support of its cause of action and the refusal of the trial court to receive and give it consideration requires a reversal of the judgment.

The judgment is reversed with instructions to. grant a new trial. The appeal from the order requiring plaintiff to elect is affirmed.

WEDELL, J. (concurring in part and dissenting in part): I concur in that portion of the opinion which pertains to election of remedies and also in that part of the opinion which remands the case for a new trial by reason of the improper exclusion of testimony. I do not concur in the opinion insofar as it fails to rule upon another specification of error, namely, the sustaining of defendants' demurrer to plaintiff's evidence. Plaintiff also specifically appealed from that order and is entitled to a ruling thereon.

A portion of plaintiff's (appellant's) proffered evidence was excluded. Thereafter the demurrer to its evidence was sustained on the ground plaintiff had failed to establish a cause of action. Plaintiff contends the proffered evidence of the witness Gear was improperly excluded and that the demurrer to its evidence should have been overruled. This court agrees the proffered evidence was erroneously excluded and for that reason it has ordered a new trial. But we fail to decide whether the trial court erred in sustaining the

demurrer to the evidence of plaintiff which was admitted. We also fail to decide whether the evidence admitted together with the excluded proffered evidence, in affidavit form, would have been sufficient as against the demurrer. Appellant is entitled to have the ruling on the demurrer reviewed.

Furthermore, without ruling on the demurrer we intimate in the concluding portion of the opinion that the admitted evidence and the erroneously excluded evidence combined might not have been sufficient to withstand a demurrer. In that view I do not concur. Such a conclusion, in my opinion, is wholly contrary to the fundamental principles enunciated in the opinion. If we think the combined evidence would have been insufficient then we are obliged to sustain the ruling on the demurrer for the simple reason that the excluded evidence, if it had been admitted, would not have been sufficient to establish a cause of action. The opinion neither affirms nor reverses the ruling on the demurrer. The result is neither the parties nor the trial court is advised whether the evidence would have been sufficient as against a demurrer if the testimony of the witness Gear had been admitted and had conformed with the affidavit filed in support of the motion for a new trial.

I am inclined to believe the evidence admitted was probably sufficient as against a demurrer, but need not pursue that point since a majority of the court favors remanding the case with directions to admit the excluded evidence. I will, however, state that if the proffered evidence of the witness Gear had been admitted and had conformed with his affidavit that plaintiff, in my opinion, would have established a prima facie case for injunctive relief. That affidavit reads:

"RAYMOND GEAR, of lawful age, being first duly sworn on his oath, states that he was a witness and testified at the trial of the above entitled action; that if he had been permitted to testify in answer to questions propounded by plaintiff's attorney, he would have stated that at the time he conveyed Lots 414 and 416 on Main Street in the City of Florence, Marion County, Kansas, to D. F. Urschel and Alice P. Urschel, that the stairway at the south side of the building erected on said lots and concerning which he testified at said trial was open and was being used by the owner and tenants of the adjoining Lot 412, then owned by H. J. Reverend for the purpose of gaining access and going to and from the second story of said Reverend Building, and that it had been so used by Mr. Reverend and his tenants at all times since the construction of the building and that said stairway continued to be so used as long as this affiant remained in the City of Florence; that at the time the buildings on said lots were erected, he and Mr. Reverend each paid one-

half of the cost of the wall between said buildings and that said wall was erected approximately on the lot line; that the defendants had been in and out of said building, both the first and second floors, were familiar with the construction of said stairway and knew it was being used by H. J. Reverend and his tenants at the time and prior to the date of the deed conveying said premises to them."

What defendants' evidence may develop is an entirely different matter and is a subject which, of course, is not now before us.