No. 40,568

T. W. JACKSON, *Appellant,* v. DONALD O'NEILL, *Appellee.*

(317 P. 2d 440)

Opinion filed November 9, 1957.

*D. A. Hindman,* of Stockton, argued the cause, and *Stanley Krysl,* of Stockton, was with him on the briefs for the appellant.

*William H. Stowell,* of Phillipsburg, argued the cause, and *Doris Dixon Stowell,* of Phillipsburg, was with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: Plaintiff (appellant) brought this action in ejectment and for possession of a section of land in Phillips county. Defendant (appellee) answered by a general denial and filed a cross petition for damages containing two causes of action.

Defendant alleged in his first cause of action that he had entered into a contract with the owners for the purchase of the property and that plaintiff, knowingly and without justification, induced the owners to breach the contract.

Defendant alleged in his second cause of action that he discussed the contract with Floyd Keesee, a real estate broker, and that he hired Keesee as his agent to obtain a loan for the purchase of the land, entrusting him with confidential information concerning defendant's previous negotiations. He further alleged that plaintiff prevailed upon Keesee to also act as his agent in purchasing the same property from the owners.

Both causes of action alleged that plaintiff damaged defendant by inducing the owners of the land on which defendant was tenant

to sell the property to plaintiff, thus breaching defendant's contract of purchase. The case was tried to a jury.

The facts may be briefly summarized as follows:

The land in question was owned by J. G. Bovey and Ada Wilkins. Bovey, with authority from Mrs. Wilkins, was in charge of selling the property. In 1946, defendant rented the land through Mrs. Wilkins and has since been a tenant in possession. Defendant had been attempting for some time to purchase the land from Bovey and had been trying to secure a loan for that purpose through Floyd Keesee, a real estate broker. On November 1, 1955, Bovey wrote defendant that if he wished to purchase the land the price was $20.00 an acre ($12,800.00), with a reservation of five percent of the mineral rights and $1000.00 to be placed in escrow, but he would not sell until after January 1, 1956 for income tax reasons. On January 16, 1956, defendant called Bovey on the telephone and told him he would take the land on Bovey's terms, but that the $1000.00 escrow payment was to be returned to defendant in the event he failed to complete his loan for a part of the purchase price. Bovey agreed and stated, "I have sold you the land." Defendant had the mentioned agreement typed, with the agreed terms of the contract embodied therein, signing and mailing the original and two copies of the same to Bovey for his and Mrs. Wilkins' signatures. On January 20, defendant saw Keesee and told him he had accepted Bovey's offer to sell the land and asked Keesee to go ahead with the loan.

Thereafter, on January 27, plaintiff, being well acquainted with the Bovey place and owning land in the immediate vicinity, went to Keesee's office relative to the purchase of this property, asking him if the place had been sold. Plaintiff testified:

"He [Keesee] said he didn't know, possibly was, at some time past, O'Neill [defendant] had tried to get him to negotiate a loan for him and he was unable to get it through. He told me that before we telephoned. After this conversation, I ask[ed] Keesee to call Bovey to see if the land could be bought. He called out there to Bovey and talked about the deal. The upshot of that conversation is that I made arrangements to buy this land for $14,000.00."

Plaintiff further testified that he did nothing to determine from defendant whether the negotiations for the loan for purchase of the property had terminated.

The jury returned a general verdict in favor of the defendant for $1200.00 and, in answer to special questions submitted to it by the

trial court insofar as they are pertinent hereto, found that defendant agreed to buy the land from Bovey under the terms and conditions agreed upon, and so advised Keesee on January 20, 1956; that plaintiff knew Keesee had been trying to negotiate a loan for defendant on the Bovey place and did not inquire of defendant whether he had terminated his relationship with Keesee; that Keesee was acting adversely to the interests of defendant when he called Bovey and arranged for plaintiff to buy the property; and that the actions of Keesee resulted in the land being sold by Bovey to plaintiff.

From an order overruling plaintiff's motion for a new trial, he appeals, and states that his grounds of error are limited to defendant's first cause of action.

Plaintiff first contends that the evidence was insufficient to show him guilty of any wrongful or unjustifiable conduct for the reason that he had Keesee contact Bovey by telephone and was advised that the land was for sale; also, he had a right to rely on that information.

We do not think the matter is that simple. The evidence in the case disclosed that both plaintiff and defendant lived in the same neighborhood; both were engaged in the farming and cattle business; plaintiff knew that the defendant had been a tenant and in possession of the Bovey place since 1946. Plaintiff was advised by Keesee that the land was possibly sold and that defendant had been negotiating with Bovey for the purchase of the land and that Keesee had been acting as agent for defendant. Keesee knew defendant had entered into a contract with Bovey to purchase the land for $12,800.00. The evidence further disclosed that plaintiff had his agent Keesee call Bovey and ask him whether the land could be bought—*not* whether it was for sale or had been sold. Then, through Keesee he bid $14,000.00 cash, which was $1200.00 more than defendant's contract of purchase. Keesee also knew or had reason to know that when he made the telephone call to Bovey on January 27, at plaintiff's request, he was acting adversely to the interests of defendant. With all such knowledge, plaintiff failed to ascertain from his neighbor (defendant), who was in possession, whether he had contracted for or had purchased the property. Defendant's possession under the mentioned facts was sufficient to put plaintiff on notice that defendant had some claim to the property. Therefore, plaintiff is in no position to say that he purchased the

land in ignorance of defendant's contract of purchase or that his acts were not wrongful or unjustifiable under the facts and circumstances shown in the case. The open and notorious possession of real property ordinarily is constructive notice to those dealing with the property of the rights of the one in possession. (*Haas v. Nemeth*, 139 Kan. 252, 31 P. 2d 6; *Federal Savings & Loan Ins. Corp. v. Urschel*, 159 Kan. 674, 157 P. 2d 805; *Harvester Co. v. Myers*, 86 Kan. 497, 121 Pac. 500.) This and other evidence in the record, both oral and documentary, not herein narrated was sufficient to go to the jury on the question of whether plaintiff's actions were wrongful and unjustifiable under the circumstances.

Plaintiff's second contention is that the mentioned contract between defendant and Bovey contained a reservation that the $1000.00 to be put in escrow would be returned to defendant on his failure to obtain a loan for part of the purchase price; that, thus, the contract lacked mutuality and was therefore invalid and furnished no cause of action for damages against plaintiff for causing the breach thereof.

The trouble with plaintiff's contention is that he was not a party to this contract. Such a contention might have been important if one of the parties to the contract had refused to perform. The weakness of plaintiff's argument is that the contract was not subject to collateral attack by him or any other third party. The contract was valid for all purposes except as a basis for an action to enforce it. Plaintiff cannot make lack of mutuality of the contract, to which he was not a party, available as an excuse for his wrongful and unjustifiable conduct, nor can he escape the consequences of his wrongful intermeddling, since such conduct interfered with and prevented the consummation of the sale of the land to defendant. (*Vaught v. Pettyjohn & Co.*, 104 Kan. 174, 178 Pac. 623; *Powell v. Powell*, 172 Kan. 267, 270, 239 P. 2d 974, and cases therein cited.)

Plaintiff states he does not want a new trial but is asking this court to set aside the judgment rendered for the defendant and to enter an order directing that the trial court render judgment in favor of the plaintiff for costs. In view of what we have said on the issues raised by plaintiff, we are compelled to affirm the judgment. It is so ordered.