(582 P.2d 1160)
No. 49,155

TOMMY E. STAUTH, *Appellee,* v. ANDREW M. STAUTH, *Appellant.*

Petition for review denied November 9, 1978.

Opinion filed August 11, 1978.

*Donald E. Shultz* of Shultz & Shultz, Chartered, of Dodge City, for the appellant.

*Camilla Klein Haviland,* of Dodge City, for the appellee.

Before REES, P.J., SPENCER and PARKS, JJ.

SPENCER, J.: In an action commenced for liquidation of partnership assets and for an accounting, the trial court made findings of fact in relevant portion as follows:

"1.   Plaintiff and Defendant were partners in the real estate business, and dissolved the partnership by mutual agreement on or about the 1st day of May, 1975.

"2.   That each partner was to share 50% of partnership profits and bear 50% of partnership expense.

"3. Plaintiff's son, Thomas D. Stauth, made the first tentative purchase inquiries concerning the property known as 'Highland Plaza #2.'

"4. Subsequently, on November 29, 1972, Defendant entered a contract to purchase 'Highland Plaza #2' in his own name. Defendant made a downpayment on the purchase contract with his own check but later reimbursed himself from the partnership checking account.

"5. From November 29, [1972], all transactions concerning 'Highland Plaza #2' were carried on the books of the partnership and all receipts and disbursements were handled through the partnership account. Profits were reflected in partnership income tax returns.

"6. By reason of the foregoing, 'Highland Plaza #2' was and is property of the partnership and Defendant should be ordered to account for one half of the rents and profits from said property from May 1, 1975."

The court then imposed a resulting trust in favor of the partnership on that real estate known as "Highland Plaza #2" and held by defendant in his own name. Defendant has appealed.

It is argued that, since record title to the real estate was in the defendant's name alone, his wife had an interest in the property by virtue of K.S.A. 59-505, which required that she be made a party defendant. Defendant's argument was completely answered in *Hindman v. Shepard,* 205 Kan. 207, 468 P.2d 103 (1970), where it was stated:

"The inchoate interest of a husband in the wife's real property declared in K.S.A. 59-505 does not include such real estate as is taken by legal proceeding prior to the death of the wife, and the husband in such a case is not an indispensable party to the proceeding." (Syl. 6.)

Although the foregoing involves the husband's interest in property titled in the wife, the rule applies equally to both spouses. Defendant's record title was "taken by legal proceeding" in this case when it was adjudged that the real estate was in fact partnership property. Once this determination was made an additional reason arose for holding that the wife need not be a party. K.S.A. 56-325(*b*)(5) provides:

"A partner's right in specific partnership property is not subject to dower, courtesy or allowances to widows, heirs or next of kin."

It is argued that the court erred in finding a resulting trust. K.S.A. 58-2406 provides that, subject to the provisions of K.S.A. 58-2407 and 2408, no trust shall result when a conveyance for a valuable consideration is made to one person and the consideration therefor paid by another. K.S.A. 58-2408 provides in part that an exception exists "where it shall be made to appear that by

agreement and without any fraudulent intent the party to whom the conveyance was made, or in whom the title shall vest, was to hold the land or some interest therein in trust for the party paying the purchase money or some part thereof."

The evidence was conflicting as to whether defendant was to hold the property for the partnership. Defendant testified that sometime after he had signed the real estate purchase contract, but prior to closing, it was agreed between plaintiff and defendant that they would share profits on the sales of houses and lots as long as plaintiff supervised construction on the lots. The lots were then entered as assets on the partnership records as a matter of convenience, and if plaintiff was to share in the profits, the expenses should be paid by the partnership. Plaintiff testified that the agreement prior to closing was that the lots were to be partnership property, but that defendant told him the lots could be held in defendant's name alone as a convenience in making sales. In that way only defendant and his wife would be required to execute conveyances. Plaintiff stated that defendant told him that the attorney for the partnership had indicated that title to the real estate might be held in defendant's name alone as long as there was a written agreement that the lots were indeed partnership property.

In 60 Am. Jur. 2d, *Partnership* § 93, pp. 22-23, it is stated:

". . . An agreement that certain real estate should be part of the firm assets may be implied from the acts and conduct of the partners; the agreement need not be express.

". . . [A]mong indicia of partnership ownership are the payment by the partnership of taxes. . . .

"Partnership books may also be considered to determine the question, as, for example, how the property was entered and carried on the books of the company. The manner in which the accounts are kept, whether the purchase money is severally charged to the members of the firm, or whether the accounts treat it the same as other firm property, may be controlling circumstances in determining such intention, and from these circumstances the agreement of the parties may be inferred."

From the record, it appears that the purchase of the real estate was entered on the partnership records prior to the closing of that transaction. Thereafter, abstract fees, taxes, and payments on the purchase money mortgage were paid by the partnership. Profits were reported as partnership income.

Whether there is an agreement to hold in trust may be inferred from all the circumstances in the case. The test of the sufficiency

of the evidence for such an agreement is that it must be clear and satisfactory to the trial court. Where two conflicting inferences are possible, the trial court does not err because it makes the one unfavorable to the complaining party. *In re Estate of Gereke,* 165 Kan. 249, 195 P.2d 323 (1948).

The trial court obviously found the intent of the parties to be that defendant was to hold the property for the partnership. It cannot be said that the trial court erred in so finding. On appeal, it is not the function of the appellate court to weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. The reviewing court is concerned only with evidence which supports the trial court's findings and not with evidence which might have supported contrary findings. *Steele v. Harrison,* 220 Kan. 422, Syl. 1, 552 P.2d 957 (1976).

Did the partnership provide the purchase money or some part thereof? Defendant made the down payment from his personal account but was reimbursed from partnership funds on the day of closing the transaction. The purchase money was provided by a 100 percent loan obtained in the names of defendant and his wife and secured by a mortgage on the real estate. This loan was entered as a liability on the partnership records on the day that purchase was finalized. The partnership made all payments on the loan. In the early case of *Tenney v. Simpson,* 37 Kan. 353, 15 Pac. 187 (1887), the court noted:

" . . . [T]he consideration [required for a resulting trust] need not in any case pass directly from the *cestuiqui trust,* or beneficiary, to the grantor of the land. [Citations.] Besides, the transaction in the present case was a partnership transaction, and in such case real property may usually be considered in nearly the same manner as personal property, and the real intention of the parties with reference thereto, their contracts, promises or mutual understandings will govern, without reference to whether they have been reduced to writing, or not. [Citations.] In such cases the statute of frauds and kindred statutes have no application . . . ." (37 Kan. at 362-363.)

Even though funds for the purchase of the real estate were provided from another source, it is evident that the liability for repayment of those funds was assumed by the partnership, which thereafter did in fact make all payments that were made on the loan. There was evidence from which the trial court could properly find that the partnership paid the purchase money or some part thereof. It follows that the trial court did not err in declaring a resulting trust.

It is argued that the action was barred by the statute of frauds and the statute of limitations. As noted in *Tenney*, such limitations have no application in a case such as this. See also, 89 C.J.S., *Trusts* § 101, p. 942. Since resulting trusts are created by operation of law and are matters of equity, the statute of frauds and kindred statutes do not apply. Even if this action was to be considered one "upon contract, obligations or liabilities expressed or implied but not in writing" so as to bring into play the three-year statute of limitation of K.S.A. 60-512, the action would not be barred. The three-year period begins to run from the date of the breach of the agreement. *Wolf v. Brungardt,* 215 Kan. 272, 279, 524 P.2d 726 (1974). The petition in this matter was filed December 20, 1976. The allegation is that plaintiff did not learn that defendant would not consider the lots as partnership property until sometime after the partnership was dissolved in April of 1975. If the agreement was breached at that time, this action was commenced well within the limitation period.

Defendant contends that the court refused to hear evidence of his theory of the case in that plaintiff had failed to perform his part of the agreement to the effect that profits realized on the sale of lots be shared as long as plaintiff supervised the construction of improvements on the property. That portion of the record cited by defendant in this regard reveals that the court refused to hear evidence on collateral disagreements between the partners, *i.e.,* plaintiff's performance in the construction of a motel in which they were concerned. The record clearly establishes that defendant was allowed to testify as to his theory.

Defendant complains of "rambling" answers to his questions by plaintiff and of the court allowing leading questions. Trial was to the court. Both parties expressed a desire to make the trial as short as possible. When defendant received the "rambling" answers he has excerpted in his brief, he did not attempt to "pin down" the plaintiff. He went on to other questions and did not object. Both sides used leading questions with their own witnesses and in cross-examination. The extent and use of leading questions rests within the discretion of the trial court. *State v. Jones,* 204 Kan. 719, 466 P.2d 283 (1970). Defendant has failed to show any resulting prejudice.

After judgment had been entered, defendant filed motions to confirm certain sales of real estate which had taken place pending

the conclusion of the action, and to liquidate the remaining unsold property. These motions were that the court make appropriate orders for the disposition of the proceeds pending appeal. Plaintiff opposed the motion to liquidate and requested that he be given the lots as part of his share of the partnership property. The court confirmed the sales and ordered that, when payment was made to the escrow agent, the payment should be deposited with Dane Fitch, trust officer of the First National Bank, as trustee for the court. The court also gave plaintiff the option to purchase the remaining lots at a price suggested by defendant, provided that plaintiff deposited the purchase money with the trustee named.

Following these orders, the trustee received three checks drawn on "House of Real Estate Trust Account" payable to "Andrew M. Stauth and Helen L. Stauth" signed by Andrew M. Stauth as drawer and endorsed only by "Andrew M. Stauth." These checks were from the escrow agent "House of Real Estate" and represented payments on the sales of lots confirmed by the court. The trustee also received the agreed sales price from plaintiff for the remaining lots and a quit-claim deed to those lots from defendant. Plaintiff refused to accept this deed and the trustee petitioned the court for orders. The court thereafter ordered defendant to reissue the three checks in his name alone and to endorse them to the trustee. The court also ordered defendant to transmit to the trustee a deed from "Andrew M. Stauth as Trustee" by virtue of the resulting trust and to supply abstracts of title.

It is now argued that the court lacked sufficient evidence of identity to order defendant to reissue the three checks originally issued on the account of "House of Real Estate" as escrow agent to the trustee appointed in the action. The court, however, had the original checks which were issued over the defendant's signature and could assume from that fact alone that defendant had authority to issue checks on the account. Not mentioned by the parties is the additional fact that the record reveals letters from the "House of Real Estate" with the letterhead containing the names "A. M. 'Mike' Stauth and Randy Stauth." Randy is Mike's son and "Mike" Stauth is Andrew M. Stauth. The court had authority to order defendant to reissue the checks.

It is argued that the court lacked authority to direct defendant to issue a deed "as trustee" under the resulting trust. We find no merit in this argument, nor do we find merit in the argument that

there were any inconsistencies between the court's oral orders and the written journal entry. A review of the record reveals no substantial variance. Even if there was, the written order was signed by the judge and must control. *Gill Mortuary v. Sutoris, Inc.,* 207 Kan. 557, 485 P.2d 1377 (1971).

Judgment affirmed.