James Gary LUMB and Martha Jean Lumb, d/b/a Central Kansas Sales, Debtors/Appellees,

v.

Christopher J. REDMOND, Trustee, Appellant.

No. 86–4202–R.
Bankruptcy No. 82–40817.

United States District Court,
D. Kansas.

Sept. 13, 1989.

Max M. Hinkle, Lehman, Guilfoyle & Hinkle, Abilene, Kan., for debtors-appellees.

Jan W. Luenberger, Topeka, Kan., Larry E. Bengston, Bengston, Waters & Barry, Junction City, Kan., Thomas A. Valentine, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, Kan., for appellant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a bankruptcy appeal. The appellant is the trustee in bankruptcy, Christopher J. Redmond. The appellees are the debtors, James Gary Lumb and Martha Jean Lumb. The issue presented in this case is whether, after recording a deed of farmland to her two nephews, an aunt's continuing possession of the farmland as an absentee landlord, under an unrecorded deed of a life estate in the same farmland back to her from her nephews, is constructive notice sufficient to prevent an avoidance of the life estate by the trustee of bankruptcy of one of the nephews.

The facts in the case are basically undisputed. Lois Kinsey inherited an interest in the farmland in question in 1969. She took full legal title to the property in 1971. She has lived in Colorado since 1942 and lived there during the relevant events of this case. On August 22, 1977, Lois Kinsey deeded the farmland to her two nephews: Edwin Vance Lumb and James Gary Lumb. The deed was recorded on November 4, 1977. On September 9, 1977, the nephews signed a quitclaim deed to Lois Kinsey granting her a life estate in the same property. The quitclaim deed was delivered to an attorney for Lois Kinsey, but it was not recorded until December 27, 1982, several months after James Gary Lumb filed his petition in bankruptcy.

The farmland has no buildings on it. Since 1968, the land has been farmed by DeForrest Barclay on a cash rent basis. Mr. Barclay testified that if asked on September 1, 1982 (the date James Gary Lumb filed bankruptcy), he would have said that he paid rent to the "Lumb farm account" and that Delores Lumb, sister-in-law of Lois Kinsey and the debtor's mother, received the checks. He also stated that if asked who he rented the land from, his answer would be: Delores Lumb and Lois Kinsey—the "owners" of the Lumb estate.

The question in this case is whether the bankruptcy trustee can defeat Lois Kinsey's unrecorded life estate in the property. Under 11 U.S.C. § 544(a)(3):

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

. . . .

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Thus, the trustee in bankruptcy has the rights of a bona fide purchaser of the debtor's real property. It is undisputed that these rights are determined by reference to state law. In general, actual or constructive notice of an existing right or equity of another in property will prevent someone from enjoying the rights of a bona fide purchaser. 92 C.J.S. *Vendor & Purchaser* § 324 (1955). There is no claim of actual notice in this case. However, the bankruptcy judge held and appellees contend that constructive notice existed from different sources.

The bankruptcy judge held that constructive notice could be implied from the debt-

or's brother—"[t]here is no question that a purchaser of a fractional interest from a co-owner would be required to inquire of his prospective partner about the ownership and other circumstances of the land."

The appellees argue that constructive notice could be implied from the tenant farmer, citing the case of *Deetjen v. Richter*, 33 Kan. 410, 6 P. 595 (1885). There, the plaintiff Richter conveyed land to his daughter with a warranty deed which was recorded. Two years later, after the daughter had encumbered the land with mortgages, she reconveyed the property to plaintiff by warranty deed. However, the deed was not immediately recorded. The deed was not recorded until some months after the daughter was found insane and committed to an asylum. A guardian was appointed for the daughter, and by appropriate proceedings the land in question was sold to defendant Deetjen. A deed of the property was given by the guardian to Deetjen prior to the recording of the daughter's deed of the same property to plaintiff. Plaintiff and his daughter lived on the property until plaintiff's daughter was found insane. The cultivated land was leased to a tenant who farmed the land as the tenant of plaintiff, not plaintiff's daughter. Defendant Deetjen knew the tenant and knew that the tenant farmed the property for the plaintiff, although he did not have actual notice of the deed of the property from plaintiff's daughter to plaintiff. The Kansas Supreme Court held that Deetjen could not take the property as a bona fide purchaser.

We have already held that the open, notorious, and exclusive possession of real estate under an unrecorded deed requires a subsequent purchaser to take notice of the occupant's title. We do not understand the rule to be that a person must actually reside upon the land to make his possession notice; he may actually improve and cultivate it, and perform open, notorious, and decided acts of ownership over it without residing upon it; he may cultivate and improve it by a tenant, for the possession of the tenant is his possession. There is some conflict in the authorities whether the possession of a tenant under a lease is notice simply of his tenancy, or of his tenancy and also of his landlord's title. But "there seems no good reason why, if it be admitted that possession is notice, or evidence of notice, there should be any modification of the rule that the possession by the tenant is the possession of his landlord. If the purchaser has followed up the suggestion which the possession of the premises by a third party implies, he will inquire of the actual occupant with the probability of learning that he holds as lessee of another. Inquiry cannot safely stop here, for the next step suggested by the circumstances would be to inquire of the landlord." Wade, Notice, § 286; 1 Hil. Vend. p. 4, subds. 3–8; *Wickes v. Lake*, 25 Wis. 75; 1 Jones, Mortg. § 600; *Bank v. Flagg*, 3 Barb. Ch. 316; *Wright v. Wood*, 23 Pa.St. 120.

Deetjen had notice that Stober leased from Rudolph Richter, and this was notice that Rudolph Richter was in possession by his tenant. If Deetjen had made proper inquiries, he would have been led to the knowledge of the fact that Rudolph Richter had the title to the premises. Information which makes it the duty of a party to inquire, and shows where such an inquiry may be effectual, is notice of all the facts which might be thereby ascertained. No purchaser of real estate is at liberty to remain intentionally ignorant of facts relating to his purchase within his reach, where the property is in the actual, open, visible, notorious, and exclusive possession of another, and then claim protection as an innocent purchaser. The presumption of law is that upon inquiry he will ascertain the true state of the title.

6 P. at 598–99.

Appellant relies chiefly upon another Kansas case, *McNeil v. Jordan*, 28 Kan. 5 (1882). In this case, plaintiff, Lena McNeil, owned and lived upon land which she wished to convey to Martha McNeil. Plaintiff hired an attorney to draw a deed for the intended conveyance. The attorney produced an instrument for plaintiff's approval. After plaintiff examined the deed, she and her attorney went to the office of a notary public to execute the document. Once there, the attorney substituted a different instrument which conveyed the prop-

erty to the attorney. Plaintiff signed the substituted instrument without examining it. Thereafter, the attorney mortgaged the property and later conveyed the property to a man named Buckman. All of this time, plaintiff lived on the property. Plaintiff sought to set aside the conveyance of the property to Buckman. Despite plaintiff's open and notorious possession of the property, and despite the fraud of the attorney who conveyed the property to Buckman, the Kansas Supreme Court held that plaintiff was not entitled to the property.

We have time and again stated that open, notorious, unequivocal, and exclusive possession of real estate under an apparent claim of ownership is notice to the world of whatever claim the possessor asserts, whether such claim be legal or equitable in its nature [citations omitted]. This rule, however, does not, in the nature of things, apply to a vendor remaining in possession. A purchaser from the grantee of the party in possession need not inquire whether such party has reserved any interest in the land conveyed. So far as the purchaser is concerned, the actual occupant's deed is conclusive upon that point. The object of the law in holding possession constructive notice is to protect the possessor from the acts of others who do not derive their title from him, not to protect him against his own acts, not to protect him against his own deed.

28 Kan. at 11.

The court believes that a purchaser could reasonably be expected to inquire of the tenant in possession of the property or the co-owner of the property to learn facts which might affect the title. See 92 C.J.S. *Vendor & Purchaser* § 327 (1955). Accordingly, we find the constructive notice arguments advanced by the bankruptcy judge and the appellees more persuasive than the argument of the appellants. Specifically, we believe the *McNeil* case is distinguishable on the grounds that Lois Kinsey, unlike Lena McNeil, is not a grantor or vendor of the interest she holds in the property. Rather, she is a grantee of a life estate from Edwin Vance Lumb and James Gary ~Lumb. Possession is not the sole evidence of Lois Kinsey's life estate. There is also the quitclaim deed executed

by her nephews. Of course, the deed was unrecorded at the time of this bankruptcy. But, the possession of the property by a tenant of Lois Kinsey and the co-ownership of the property by Edwin Vance Lumb offered any purchaser reasonable sources of inquiry for notice of title or interest in the property.

Therefore, the bankruptcy judge's opinion is affirmed.

IT IS SO ORDERED.