**In re Jonathon W. KASPAREK, also known as J.W. Kasparek, and Mandy K. Kasparek, formerly known as Mandy K. Hawn, Debtors.**

**J. Michael Morris, Trustee, Plaintiff–Appellant,**

**v.**

**Wayne A. Kasparek, James Kasparek, and Jonathon W. Kasparek, Defendants–Appellees.**

**BAP No. KS–09–041. Bankruptcy No. 07–13019. Adversary No. 08–05085.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

April 5, 2010.

Submitted on the briefs: *

J. Michael Morris of Klenda, Mitchell, Austerman & Zuercher, L.L.C., Wichita, KS, for Plaintiff–Appellant, J. Michael Morris, Trustee.

Mark Joseph Lazzo of Mark J. Lazzo, P.A., Wichita, KS, for Defendant–Appellee, Wayne A. Kasparek.

Before CORNISH, Chief Judge, MICHAEL, and RASURE, Bankruptcy Judges.

RASURE, Bankruptcy Judge.

Appellant J. Michael Morris, Chapter 7 Trustee ("Trustee") of the bankruptcy estate of Jonathon W. Kasparek ("Debtor" or "Jonathon"), appeals the bankruptcy court's Memorandum Opinion and Order Denying Trustee's Complaint to Sell Jointly Owned Property (the "Order"). The recorded deed to the real property at issue reflects that the property is held in joint tenancy by the Appellees herein: Debtor, his brother James Kasparek ("James"), and his father, Wayne A. Kasparek ("Wayne"). Only Wayne has filed a brief in this appeal.[1] The bankruptcy court concluded that (1) Wayne owned the entire equitable interest in the property at issue, (2) the estate acquired only the Debtor's bare legal title to the property, (3) the Trustee's strong-arm powers as a bona fide purchaser of real property under § 544(a)(3)[2] could not be exercised to avoid Wayne's equitable interest because the Debtor had not transferred the property to Wayne, and (4) even if § 544(a)(3) was applicable, the Trustee did not qualify as a bona fide purchaser under Kansas law. Accordingly, the bankruptcy court concluded that the Trustee could not sell the property under § 363(h).

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1. On December 18, 2009, we issued a Notice of Deficiency and Order to Show Cause to Appellees, advising the Appellees that a fail-

ure to file a Statement of Interested Parties ("SIP") within 14 days may result in their pleadings being stricken. Although Wayne's SIP, filed January 8, 2010, was untimely, we nevertheless deem the deficiency satisfied.

2. Unless otherwise indicated, all statutory references herein are to sections of the Bankruptcy Code, Title 11 of the United States Code.

For the reasons stated herein, we conclude that the Order should be REVERSED and the matter REMANDED to the bankruptcy court.

## I. BACKGROUND

The material facts are not in dispute. In 2005, Wayne purchased approximately 80 acres of farmland in Kansas (the "Property"). At Wayne's direction, the seller of the Property executed a Kansas Warranty Deed to "Wayne A. Kasparek, Jonathon W. Kasparek, and James M. Kasparek, GRANTEE as joint tenants with the right of survivorship and not as tenants in common." [3] The deed was promptly recorded in the county land records.[4] Since 2005, the Property has been leased to an unrelated tenant on a crop-share basis. Wayne paid the entire purchase price for the Property, receives all of the landlord's share of income, and pays all of the landlord's share of expenses. At trial, all three joint tenants testified that in taking title in joint tenancy with his sons, Wayne did not intend to make a present gift to them, but instead intended to insure that upon Wayne's death, the Property would vest in his sons without probate proceedings.

On December 12, 2007, Jonathon and his wife filed a petition for relief under Chapter 7 of the Bankruptcy Code. In their schedules, they disclosed that Jonathon had a one-third fee simple interest in the Property and valued the Property at $63,760.[5] On April 3, 2008, the Trustee filed a Complaint to Sell Jointly Owned Property ("Complaint"), naming Jonathon, Wayne and James as Defendants, and alleging all elements of § 363(h) were met.

Specifically, the Trustee alleged that Jonathon held a one-third interest in the Property, that partition of the Property among the joint tenants was impracticable, that the sale of the estate's undivided one-third interest would yield less to the estate than if all interests in the Property were sold, that the benefit to the estate outweighed the detriment to the other joint tenants, and that the Property was not used to produce or distribute energy.[6] In his answer, Wayne asserted that the Property "is entirely owned by [Wayne] and is not an asset of the bankruptcy estate under 11 U.S.C. § 541." [7]

In the Pretrial Order, the following factual and legal questions were presented in connection with the Trustee's theories of recovery: (1) Could the estate avoid Wayne's alleged equitable interest in the Debtor's record one-third interest in the Property by virtue of the Trustee's rights as a hypothetical bona fide purchaser under § 544(a)(3)? (2) Could the Trustee prove all the elements required under § 363(h) to sell the estate's and the joint tenants' interests in the Property? and (3) Did James and Jonathon consent to the sale by failing to file an answer opposing it? [8] The issues relating to Wayne's affirmative defenses were presented as follows:

(1) What, if any, interest does the estate have in the real estate at issue?

(2) Whether it was the intention of Wayne Kasparek to add Defendants Jonathon and James Kasparek to the deed for estate planning purposes only?

---

**3.** *Kansas Warranty Deed, in* Appellant's Appendix ("App.") at 284.

**4.** *Id.*

**5.** *Schedule A, in* App. at 20.

**6.** *Complaint, in* App. at 50–51.

**7.** *Defendant Wayne Kasparek's Amended Answer to Complaint* at 1, *in* App. at 55.

**8.** *Pretrial Order* at 3–4, ¶¶ 7.1a, 7.1b, and 7.1c, *in* App. at 60–61.

(3) Can Defendants rebut the presumption of equal ownership of the real estate? [9]

A trial on the merits was held on December 15, 2008. On July 29, 2009, the bankruptcy court issued the Order, concluding as follows:

> The Court holds that the estate does not have an interest in the Farm Property for purposes of a sale under § 363(h). Pursuant to § 541(d), the estate's interest is limited to Debtor's bare legal title. The Court holds that the strong-arm powers of § 544(a)(3) are limited to recovery of transfers made by a debtor and do not include recovery of an equitable interest in real property held by the Debtor's joint tenant. Further, assuming that the scope of § 544(a)(3) would allow the avoidance of such equitable interests, the Trustee as a purchaser of Debtor's interest would have notice of Wayne Kasparek's equitable interest in the Farm Property and would therefore not be a bona fide purchaser for value who could purchase Debtor's interest in the Farm Property free of Wayne Kasparek's equitable interest. [10]

Accordingly, the bankruptcy court denied the Trustee's request to sell the Property under § 363(h). The Trustee timely appealed the Order.

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal. [11] Neither party elected to have this appeal heard by the United States District Court for the District of Kansas. The parties have therefore consented to appellate review by this Court.

A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " [12] Here, the bankruptcy court's order concluded the adversary proceeding, and thus the Order is final for purposes of review.

## III. STANDARD OF REVIEW

The Trustee does not take issue with any finding of fact established by the bankruptcy court. [13] Therefore, only conclusions of law, *i.e.*, the bankruptcy court's statutory construction and its application of bankruptcy law and Kansas law to the undisputed facts, are appealed. Legal questions are reviewed *de novo*. [14] *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision. [15]

## IV. DISCUSSION

The Trustee presents three issues on appeal. First, he argues that the bankruptcy court erred in determining that Wayne possessed "100% of the equitable interest" in the Property and in holding

---

9. *Id.* at 5, ¶ 7.2(D), *in* App. at 62.

10. *Order* at 28, *in* App. at 133.

11. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002; 10th Cir. BAP L.R. 8001–1.

12. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).

13. Appellant's Br. at 2 (the Trustee concedes that the essential facts are undisputed).

14. *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

15. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

that the Property was excluded from the estate under § 541(d). The Trustee asserts that "the only cognizable theory for deviating from the equal ownership established by the deed would appear to be a resulting trust," but Wayne did not defend on that basis, and the bankruptcy court did not make findings required by statute to impose a resulting trust.[16]

Second, the Trustee contends that even if Wayne had established a resulting trust for his benefit, the bankruptcy court erred in holding that § 544(a)(3) would not allow the Trustee to avoid Wayne's unrecorded trust interest on the grounds that only *transfers by a debtor* are avoidable under § 544(a)(3), and the Debtor had not transferred the Property to Wayne. The Trustee argues that the majority of courts that have been presented with such an interpretation of § 544(a)(3) have rejected it, and instead hold that an actual transfer of property by the debtor is not a prerequisite to the exercise of the trustee's rights and powers under § 544(a)(3).

Finally, the Trustee asserts that the bankruptcy court erred in concluding that, in any event, the Trustee could not avoid Wayne's unrecorded trust interest under § 544(a)(3) as a hypothetical bona fide purchaser of the Debtor's recorded undivided one-third interest because under Kansas law, such a purchaser would have had "inquiry notice" that Wayne was the sole equitable owner and therefore would have acquired the Property subject to Wayne's trust interest. While conceding that inquiry notice of an unrecorded claim or interest would defeat a trustee's status as a bona fide purchaser, the Trustee contends that in this case, facts revealed by a hypothetical purchaser's diligent inquiry would have been consistent with the Debtor's joint tenancy interest of record and would not have imposed a duty to inquire further to determine whether the Debtor held his interest in trust for Wayne. Thus, the Trustee asserts that his status as a bona fide purchaser was not compromised by knowledge imputed to him through inquiry notice.

Because these issues arose in the context of a complaint seeking an order authorizing the Trustee to sell the interests of all joint tenants in the Property, we first look to § 363(h) to determine who had the burden of proving elements of § 363(h). Section 363(h) provides—

Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.[17]

Section 363(p) states—

In any hearing under this section—

---

**16.** Appellant's Br. at 6–9.

**17.** 11 U.S.C. § 363(h).

(1) the trustee has the burden of proof on the issue of adequate protection; and

(2) the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest.[18]

 The central issue on appeal concerns the extent of Wayne's interest in the Property. As the party contesting record title and asserting full equitable title to the Property, Wayne had the burden of proving the validity and extent of his equitable interest.

A. *The bankruptcy court erred in excluding the Debtor's interest from property of the estate on the theory that Wayne had rebutted the presumption of equal ownership of the Property.*

 The recorded deed unambiguously established that the Debtor, James, and Wayne were joint tenants as of the petition date. Kansas's constructive notice statute provides that recorded instruments "impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice." [19] Pursuant to the record title, the three joint tenants owned equal undivided interests in the Property—that is, nothing on the warranty deed indicated unequal ownership or that the Debtor held his joint tenancy interest in

trust for Wayne, and there was no subsequent recorded conveyance of the Debtor's interest to Wayne. When a deed does not itself establish an unequal allocation of the joint tenants' interests, the legal effect is that the joint tenants own equal undivided interests in the property.[20] However, a joint tenant who has paid the purchase price for the property may claim a greater equitable interest in the property than the other joint tenants by asserting that the other joint tenants hold their interests in an implied trust for the purchaser's benefit.[21] Kansas statutes govern and restrict the creation and recognition of trusts that hold real property.

 Section 58–2401 of the Kansas Statutes provides—

No trust concerning lands *except such as may arise by implication of law* shall be created, unless in writing signed by the party creating the same, or by his or her attorney thereto lawfully authorized in writing.[22]

Section 58–2403 of the Kansas Statutes states—

The record of such trust in the proper county shall be deemed actual notice thereof to every person claiming under a conveyance made or a lien created after such recording.[23]

Accordingly, only a written, recorded declaration of trust will impart notice that real property is held by a grantee in express

---

18. 11 U.S.C. § 363(p).

19. Kan. Stat. Ann. § 58–2222.

20. *Anderson v. Anderson,* 137 Kan. 833, 22 P.2d 471, 472–73 (1933). In *Anderson,* the Kansas Supreme Court held that a deed granting title to two grantees without designating that one grantee acquired a greater interest than the other established that these co-tenants acquired equal interests as a matter of law. The court expressly rejected the theory that such a deed created only a "pre-

sumption" of equal interests that could be rebutted by evidence that one grantee contributed more to the purchase price. Because joint tenants are co-tenants, the *Anderson* case states the rule for joint tenancy deeds as well.

21. *Id.* at 473.

22. Kan. Stat. Ann. § 58–2401 (emphasis added).

23. Kan. Stat. Ann. § 58–2403.

trust for another. Because no written declaration of trust was recorded in the county land records in this case, the only way the bankruptcy court could have concluded, as it did, that contrary to the recorded deed, Wayne had "100% equitable title" in the Property, was if a trust arose for Wayne's benefit "by implication of law." [24] Such implied trust interests in real estate are also governed by statute in Kansas.

▮▮▮ Pursuant to § 58–2406 of the Kansas Statutes—

> When a conveyance for valuable consideration is made to one person and the consideration therefor is paid by another, no use or trust shall result in favor of the latter; but the title shall vest in the former, subject to the provisions of [§§ 58–2407 and 58–2408].[25]

Kansas is one of the few states (including Indiana, Minnesota, New York, and Wisconsin) that has abolished by statute what other states recognize as a "purchase money resulting trust." [26] The purpose of these statutes is to prevent a party from converting cash to real property and titling the property in the name of a third person, yet keeping all equitable rights and interests in the property through a secret trust, to the detriment of the true purchaser's creditors. For this reason, Section 58–2407 of the Kansas Statutes provides that the conveyance to a grantee who has not paid consideration is "presumed fraudulent as against the creditors of the person paying the consideration," resulting in a trust in favor of the payor's creditors.[27] However, under Section 58–2408 of the Kansas Statutes, if the payor can establish (1) it had an agreement with the grantee that the grantee would hold the property for the benefit of the payor and (2) the payor had no intent to defraud its creditors, a trust in favor of the payor may be implied.[28] The party asserting the existence of the implied (or "resulting") trust has the burden of proving these elements.[29]

In this case, Wayne paid consideration for the Property, but instructed his seller to convey the Property to the Debtor, James, and himself as joint tenants. Pursuant to Sections 58–2406 and 58–2408, notwithstanding that Wayne paid the entire purchase price for the Property, no trust arose in favor of Wayne unless he could establish (1) an agreement with the Debtor that he would hold the property in trust for Wayne, and (2) that Wayne had no intent to defraud his creditors by titling the Property in joint tenancy with his sons.

▮▮▮ An agreement to hold property in trust need not be in writing, need not even be express, and can be inferred from circumstances.[30] The "lack of fraudulent

**24.** Kan. Stat. Ann. § 58–2401.

**25.** Kan. Stat. Ann. § 58–2406.

**26.** R. Chester, G.G. Bogert, G.T. Bogert, *The Law of Trusts and Trustees* § 467 (2009).

**27.** Kan. Stat. Ann. § 58–2407.

**28.** Kan. Stat. Ann. § 58–2408 ("The provisions of [58–2406] shall not extend to cases ... where it shall be made to appear that by agreement and without any fraudulent intent the party to whom the conveyance was made, or in whom the title shall vest, was to hold the land or some interest therein in trust for the party paying the purchase money or some part thereof.").

**29.** *See Katschor v. Ley*, 153 Kan. 569, 113 P.2d 127 (1941).

**30.** *See Stauth v. Stauth*, 2 Kan.App.2d 512, 582 P.2d 1160 (1978) (agreement was implied from acts and conduct of the party that paid the purchase price, and of the grantee, that the property was equitably owned by the payor; circumstantial evidence that payor paid taxes, received all profits, carried property on his books and records, and paid expenses was sufficient; the statute of frauds and parol evidence rule do not apply to exclude extrin-

intent" element refers to the intent of the intended beneficial owner with respect to his creditors.[31] Lack of fraudulent intent can also be inferred from circumstances.[32]

In this case, Wayne, who pursuant to § 363(p) shouldered the burden to prove the extent of his interest, did not assert either in pleadings or in the Pretrial Order that he held equitable title in the Property as a result of an implied trust under Section 58–2408, nor did the bankruptcy court make specific findings or conclusions required to imply a trust in favor of Wayne under the Kansas statutes.

The bankruptcy court's declaration that Wayne held "100% of the equitable title" to the Property was based entirely on the holding in a prior bankruptcy case of no precedential value, *In re Crouch*,[33] which is premised upon a misinterpretation of Kansas law governing joint tenancy in real and personal property.[34] In *Crouch*, the bankruptcy court stated that while "joint tenancy creates the presumption of equal ownership amongst the parties .... this is a rebuttable presumption and the burden of proof is on the party attacking the equal ownership presumption,"[35] citing as authority a Kansas case relating to rebutting the presumption of equal ownership of joint tenants in personal property—*i.e.*, funds in a bank account.[36] In rebutting

the presumption, "[o]ne factor that the Court must consider is which party provided the purchase price."[37]

The identity of the party that paid the purchase price (or contributed funds to a bank account) is a factor in rebutting a presumption of equal ownership with respect to personal property, but when real estate is involved, the Kansas statutes cited above governing deeds, recording, notice, and express and implied trusts provide the relevant framework for an analysis of the interests of joint tenants. As explained above, a recorded deed that is unambiguous on its face establishes record ownership. All joint tenants acquire equal undivided interests as a matter of law unless otherwise stated in the deed. If a party who paid the purchase price for real estate (who may or may not be named on the deed) claims that the record owners (who may or may not be joint tenants with the payor) hold their interests in trust for the payor's benefit, no trust arises unless the alleged beneficial owner establishes the elements of Section 58–2408. Thus, the bankruptcy court's reliance on the *Crouch* case to declare Wayne the holder of the entire equitable interest in the Property on the basis of a rebutted presumption of equal ownership, and to exclude the Property from the estate under § 541(d), was error.[38]

---

sic evidence intended to establish equitable owner of real property); *Allbert v. Allbert*, 148 Kan. 527, 83 P.2d 795 (1938); *Kull v. Pearl*, 147 Kan. 329, 76 P.2d 790 (1938); *Taylor v. Walker*, 114 Kan. 614, 220 P. 518, 520 (1923) ("The agreement and its terms may be inferred from the relations of the parties, their financial means, their conduct and admissions, and other pertinent circumstantial evidence."); *Lyons v. Berlau*, 67 Kan. 426, 73 P. 52 (1903).

31. See *Staab v. Staab*, 158 Kan. 77, 145 P.2d 452, 455 (1944).

32. See *Kull*, 76 P.2d at 795–96.

33. *In re Crouch C Stores, Inc.*, 120 B.R. 178 (Bankr.D.Kan.1990).

34. See *Order* at 5–6, *in* App. at 110–11.

35. *Crouch*, 120 B.R. at 180 (citation omitted).

36. *Id.* (citing *Walnut Valley State Bank v. Stovall*, 223 Kan. 459, 574 P.2d 1382 (1978)).

37. *Id.* (citing *Walnut Valley*, 574 P.2d at 1384).

38. Technically, even if the Debtor possessed only "bare legal title" as of the petition date, the Debtor's interest was not "excluded" from

Although the bankruptcy court did not make the necessary findings to establish an implied trust in favor of Wayne, in reviewing the evidence we note that the Debtor and his brother both testified that Wayne told them they were being put on the title solely for estate planning purposes, that they understood they had no present ownership interest in the Property, and that Wayne simply intended to confer a right of survivorship on them. There was no evidence that Wayne had any creditors to defraud, and in any case, putting the Property in his *own name* jointly with his sons is compelling evidence that he was not hiding property from his creditors. Accordingly, because Wayne did present some circumstantial evidence that might have supported a conclusion that an implied or resulting trust arose in favor of Wayne, we will address the priority of the implied trust as if the bankruptcy court had made the requisite findings.

B. *An unrecorded or implied trust in real property cannot defeat the title of a bona fide purchaser.*

 Even if we were to affirm the bankruptcy court's conclusion that Wayne owned the entire equitable interest in the Property under an implied trust theory, Kansas law subordinates such an unrecorded interest as against a subsequent purchaser. Section 58–2402 of the Kansas Statutes provides—

No such trust, whether implied or created, shall defeat the title of the purchaser for a valuable consideration and without notice of the trust.[39]

Thus, a bona fide purchaser's title is superior to the title of the beneficiary of an implied trust. In bankruptcy, the trustee stands in the shoes of a hypothetical bona fide purchaser of a debtor's interest in real property as of the petition date and has all the rights such a purchaser would have, including the right to take title free and clear of implied trust interests under Section 58–2402.

Section 544(a)(3) of the Bankruptcy Code confers these rights on the trustee. It provides—

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

. . .

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.[40]

 The bankruptcy court held that § 544(a)(3) does not permit a trustee to "avoid a transfer" and recover property from a third party if the debtor had not transferred the property out of the debtor's estate to the third party, and in the case where property is held by a debtor for the benefit of another by virtue of a constructive or resulting trust, there was no transfer by the debtor to be avoided.[41]

---

the estate under § 541(d), but was in the estate only to the extent of the "bare legal title." 11 U.S.C. § 541(a)(1) and (d).

**39.** Kan. Stat. Ann. § 58–2402.

**40.** 11 U.S.C. § 544(a)(3).

**41.** *Order* at 10–14, 28, *in* App. at 115–119, 133. The bankruptcy court acknowledged that most courts that have considered the issue have held that a trustee may obtain

We conclude that the plain language of Section 544(a)(3) grants the trustee all the rights and powers of a bona fide purchaser *in addition to* the ability to avoid transfers made by the debtor. Section 544(a)(3) provides that "[t]he trustee shall have, as of the commencement of the case ... the rights and powers of, *or* may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—... a bona fide purchaser."[42] The rights and powers of a bona fide purchaser include the right to obtain title to property free of certain unrecorded interests; the exercise of that right does not necessarily require the avoidance of a transfer. Interpreting the statute to grant the trustee the rights and powers of a bona fide purchaser only for the purposes of avoiding transfers by the debtor would render the word "or" superfluous.[43]

Accordingly, we conclude that the bankruptcy court erred in holding that a trustee's powers under Section 544(a)(3) are

limited to avoiding transfers made by the debtor.[44]

### C. *A hypothetical purchaser would not have had notice of an implied trust.*

 Kansas law governs whether the Trustee, as a hypothetical purchaser of the Property as of the petition date, would have qualified as a bona fide purchaser and acquired the Property free of unrecorded implied trust interests.[45] Under Kansas law, a purchaser is not a "bona fide purchaser" if the purchaser had actual or constructive notice of an unrecorded right or interest.[46] Under § 544(a)(3), however, a bankruptcy trustee may be a bona fide purchaser "without regard to any knowledge of the trustee," and thus the trustee is bound only by information of which a purchaser would have constructive notice.[47] Under Kansas law, whether a set of facts would impute notice to a purchaser is an issue of law (which we review *de novo*), and "[t]he perceived equities of [the] case are immaterial in determining whether [a

---

property under § 544(a)(3) free of interests that would be inferior to the title of a bona fide purchaser, such as unrecorded liens or deeds, regardless of whether such interest arose from a transfer by the debtor. *Id.* at 14, *in* App. at 119.

**42.** 11 U.S.C. § 544(a)(3) (emphasis added).

**43.** *See, e.g., Belisle v. Plunkett,* 877 F.2d 512, 515 (7th Cir.1989) ("Section 544(a)(3) allows the trustee to have a bona fide purchaser's rights *or* avoid a transfer, so a 'transfer' by the debtor cannot be a necessary condition of the exercise of the strong-arm power."); *In re Seaway Express Corp.,* 912 F.2d 1125, 1129–30 (9th Cir.1990) (*"by its terms,* [§ 544(a)(3)]] also applies if no transfer has taken place") (emphasis added).

**44.** We note that the bankruptcy court correctly rejected Wayne's argument that since the Debtor held only "bare legal title" to the one-third joint tenancy interest on the petition date and § 541(d) limited the estate's interest

in the Property to "bare legal title" (and excluded Wayne's equitable interest from the estate), that the Trustee and estate could not acquire any greater interest in the Property than the Debtor had on the petition date. *Order* at 9, *in* App. at 114. Section 541(d) only limits what becomes property of the estate under § 541(a)(1) and (a)(2), but does not purport to restrict what may become property of the estate under § 541(a)(3). Section 541(a)(3) provides that the estate includes "[a]ny interest in property that the trustee recovers under section ... 550 ... of this title," which would include property recovered under § 544(a)(3). *See, e.g., Bakst v. Corzo (In re Corzo),* 406 B.R. 154, 159–60 (Bankr.S.D.Fla.2008).

**45.** *See Hamilton v. Wash. Mut. Bank (In re Colon),* 563 F.3d 1171, 1174 (10th Cir.2009) (applying Kansas law).

**46.** *Id.*

**47.** 11 U.S.C. § 544(a).

purchaser] took with notice." [48] In Kansas, notice of a claim or interest in real property includes "implied" notice, which is often called "inquiry notice." [49]

> Actual notice may be either express or implied; that is, it may consist of knowledge actually brought personally home, or it may consist of knowledge of facts so informing that a reasonably cautious person would be led by them to the ultimate fact.... Actual notice is implied only when the known facts are sufficiently specific to impose the duty to investigate further, and when such facts furnish a natural clue to the ultimate fact.[50]

Further,

> [One] who has constructive notice of an outstanding title or right is not a bona fide purchaser.... [I]t is a general rule that knowledge of such facts as ought to put a [prudent] man on inquiry as to the title charges a subsequent purchaser with notice not only of those facts which are actually known, but also of all the other facts which a reasonably diligent investigation would have ascertained, *provided the inquiry becomes a*

*duty*, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding. But a purchaser is not deemed to have notice of matter which lies beyond the range of that inquiry and which that diligence might not disclose, and he may be a bona fide purchaser where an inquiry would not have shown defects in the title, or where, had inquiry been made, no knowledge or notice would actually have been received. There must be such a connection between the facts disclosed and the further facts to be discovered upon inquiry that the former may be said to furnish a reasonable and natural clue to the latter.[51]

Under Kansas case law, a prospective purchaser has been found to have a duty to inquire about the status of title when—

- the party in possession of the property is not the prospective grantor (*i.e.*, is a stranger to record title); [52]

- a party other than the record title holder is openly and notoriously using the property; [53]

**48.** *Miller v. Alexander*, 13 Kan.App.2d 543, 775 P.2d 198, 203 (1989); *Penrose v. Cooper*, 88 Kan. 210, 128 P. 362, 364 (1912).

**49.** *See Lane v. Courange*, 187 Kan. 645, 359 P.2d 1115, 1118 (1961).

**50.** *Faris v. Finnup*, 84 Kan. 122, 113 P. 407, 408 (1911) (citation omitted).

**51.** *Fed. Savs. & Loan Ins. Corp. v. Urschel*, 159 Kan. 674, 157 P.2d 805, 810 (1945) (emphasis added, internal quotation marks omitted). The *Lane* court considers "inquiry notice" a species of "actual notice" while the *Urschel* court describes "inquiry notice" as "constructive notice." The semantic discrepancy is not important so long as it is understood that the trustee, as a hypothetical purchaser who perfected his interest under state law as of the commencement of the case, had no hypothetical duty to make a diligent inqui-ry based on information *actually known* by the trustee either before or after the commencement of the case. Inquiry notice imposed on the trustee derives only from constructively noticed facts. Under the plain language of § 544(a)(3), any *actual knowledge* of an unrecorded interest that a trustee might have had or might obtain is irrelevant for the purposes of qualifying as a bona fide purchaser. *See, e.g., In re Deuel*, 594 F.3d 1073, 1076–77 (9th Cir.2010) (the debtor's disclosure of an unrecorded mortgage in her bankruptcy schedules did not impose "inquiry notice" of the mortgage on the trustee).

**52.** *See Int'l Harvester Co. v. Myers*, 86 Kan. 497, 121 P. 500 (1912) (collecting cases); *Deetjen v. Richter*, 33 Kan. 410, 6 P. 595 (1885).

**53.** *See Urschel*, 157 P.2d at 810 (inquiry notice of an unrecorded easement).

- a party obtains title through a quit-claim deed;[54]
- a title insurance commitment excepts certain claims or interests from coverage;[55] and
- a recorded conveyance in the chain of title contains references consistent with the existence of an unrecorded agreement concerning use of property.[56]

But Kansas courts have found no obligation to further inquire about potential unrecorded interests when—

- the purchaser knew his seller owed a third party on a promissory note, but was unaware of the unrecorded mortgage;[57] and
- after inquiry of the party in possession, the party in possession established a right to possession that was consistent with the record title; in such a case, no further inquiry is necessary.[58]

The burden of proving facts constituting actual or constructive notice (including implied or inquiry notice) of an unrecorded interest is on the party asserting the unrecorded right or interest.[59] If sufficient facts are presented, the party charged with notice is entitled to rebut by showing that an adequate investigation did not or would not have revealed the unrecorded interest.[60]

Here, Wayne had the burden of proving "known facts" that would establish a duty to further inquire about the status of the Debtor's title. In this case, these would be facts of which the Trustee has constructive notice by virtue of the land records and what would be disclosed by observing the Property. Wayne presented evidence establishing that he paid the purchase price for the Property, that his intent in titling the Property in joint tenancy with his sons was estate planning, and that

---

54. *See Schwalm v. Deanhardt*, 21 Kan.App.2d 667, 906 P.2d 167, 171 (1995) ("[W]here a purchaser takes a quitclaim deed he must be presumed to take it with notice of all outstanding equities and interests of which he could by the exercise of reasonable diligence obtain notice from an examination of all the records affecting the title to the property, and from all inquiries which he might make of persons in the possession of the property, or of persons paying taxes thereon." (Emphasis omitted.) A purchaser taking title by quitclaim deed is presumed to know he is taking doubtful title.).

55. *See City of Ark. City v. Anderson*, 15 Kan. App.2d 174, 804 P.2d 1026, 1033 (1991) (the purchaser ignored the first commitment when another title insurer issued a commitment without the exception; the court held that fact was sufficient to "excite the suspicions of a prudent person" and imposed a duty to inquire) (internal quotation marks omitted).

56. *See Froelich v. United Royalty Co.*, 178 Kan. 503, 290 P.2d 93 (1955), *modified on rh'g*, 179 Kan. 652, 297 P.2d 1106 (1956) (conveyance of oil and gas royalty (personal property) in the chain of title contained references inconsistent with the seller reserving rights in unsevered minerals (real property); the royalty conveyance was executed in furtherance of an unrecorded pooling agreement in which many landowners conveyed unsevered mineral rights to a trust in exchange for beneficial rights in minerals of other parties to the pooling agreement; the subsequent purchaser of the land had sufficient notice from the recorded instrument to confer a duty to investigate the true nature of the seller's arrangement with the trust, and thus the status of the title to the minerals).

57. *See Lane v. Courange*, 187 Kan. 645, 359 P.2d 1115, 1119 (1961).

58. *Penrose v. Cooper*, 88 Kan. 210, 128 P. 362, 364 (1912). *See also* Joyce Palomar, 3 *Patton and Palomar on Land Titles* § 674 (3d ed. 2009) (The occupier's possession must be adverse to and inconsistent with the record title holder before a potential purchaser has a duty to inquire further).

59. *Courange*, 359 P.2d at 1117.

60. *Penrose*, 128 P. at 364.

his sons acknowledged that they were not entitled to any present benefit from the Property. Wayne also established that the Property was farmed by a tenant, Josh VanDorien, who only dealt with Wayne in connection with the lease and operation of the Property. Wayne received all income payable to the landlord and paid all the landlord's share of expenses. Documentary evidence indicated that the USDA and VanDorien were aware that the Debtor and James were also record owners of the Property, but all profits and distributions were payable to Wayne.[61]

From this evidence, we conclude that a hypothetical purchaser of the Debtor's one-third interest would have had a duty to inquire of the party in possession of the Property, who appeared to be a stranger to the title, about *his claim* to the Property. However, an inquiry of VanDorien about his right to occupy the Property would not have led to facts that would put a hypothetical purchaser on notice that the joint tenants were not all equitable owners. VanDorien would have revealed that he derived his right to use and possess the Property from an agreement with Wayne to farm the land and divide the profits and expenses with Wayne. Because Wayne is a grantee on the deed as a joint tenant, VanDorien's possession as Wayne's tenant was not adverse to or inconsistent with

record title.[62] Because VanDorien's occupancy derived from a lease with one joint tenant, and VanDorien did not claim an interest *adverse* to any of the joint tenants, a purchaser would not have had any duty to inquire further of VanDorien regarding the relative rights of Wayne and the Debtor in the Property.[63]

 The bankruptcy court concluded that the inquiry of VanDorien "would naturally lead to knowledge of Debtor's lack of equity." [64] We disagree and believe that implied notice based on the occupation of property by someone other than a record title holder is limited to notice of the *possessor's* potential claim to the property, whatever that may be, and once it is learned that the possessor does not claim a right adverse to the record title holders, no further inquiry is required.

Having established that inquiry of the occupant of the Property would not have disclosed any interest adverse to the record title, the question becomes whether any other constructively known facts were "sufficiently specific to impose the duty to investigate further" and would have "furnished a natural clue to the ultimate fact" of the existence of an implied trust in favor of Wayne. The result in this case turns on whether a purchaser of the interest of one joint tenant in real property has a duty to approach the other joint tenants to deter-

---

61. *Correspondence from the USDA*, in App. at 285–88.

62. *See* 3 *Patton and Palomar on Land Titles* § 674 (one joint owner's possession of property does not impute notice of a greater interest than other joint owners who have record title); *Womack v. Horob Livestock Inc. (In re Horob Livestock Inc.)*, 382 B.R. 459, 481–82 (Bankr.D.Mont.2007) (where only one of three joint tenants occupied property, trustee, as hypothetical purchaser, was not charged with inquiry notice that the occupying joint tenant had any greater right to the property than the other joint tenants) (applying North Dakota law); *Schoenmann v. De Leon (In re*

*Whiting)*, 311 B.R. 539, 545 (Bankr.N.D.Cal. 2004) (under California law, "[a] prudent purchaser is required to make inquiry as to another's interest in property only when the possession of the property is inconsistent with the record title") (emphasis omitted).

63. *See Penrose*, 128 P. at 364 ("when inquiry is made resulting in information that the possession is held by one who has placed upon record the evidence of his right to occupy, inquiry is arrested at that point").

64. *Order* at 26, *in* App. at 131.

mine the extent of the seller's rights in the property and any potential unrecorded agreements with respect to the property. We have not located any Kansas precedent that imposes such a duty on a prospective purchaser.

 The bankruptcy court relied upon *Lumb v. Redmond*,[65] a Kansas federal district court case, in adopting the view that "a prudent person would make inquiry of co-owners of farm land before purchasing a partial interest."[66] The bankruptcy court predicted that "the Kansas Supreme Court would hold that where a co-tenant's interest is created by a joint tenancy deed with right of survivorship with two other individuals having the same last name, a cautious purchaser should

suspect that the form of ownership was selected to circumvent probate and the equitable interests of the cotenants may not be equal."[67] Under the misapprehension that the joint tenancy deed created a "rebuttable presumption" of equal ownership, rather than establishing as a matter of law undivided equal interests in real property,[68] the bankruptcy court expanded the duty of inquiry into title of real property to an untenable extent. We believe that a duty to inquire about the possibility of an implied trust or other unrecorded agreements when title is held by joint tenants undermines the purpose of the Kansas recording statutes, imposes an undue burden on purchasers,[69] and impairs the reliability of record title.[70]

65. 105 B.R. 658 (D.Kan.1989). The *Lumb* case is distinguishable because the occupant of the property in *Lumb* derived his right to possession from a stranger to the record title. As set forth above, Kansas law does impose a duty upon a purchaser to inquire as to the nature of the occupant's claim against the property at issue. In the *Lumb* case, unlike this case, such an inquiry would have disclosed that the occupant's landlord was not a holder of record title. The occupant's landlord was the aunt of the record title holders and was the equitable owner by virtue of an unrecorded deed in which her two nephews granted her a life estate. Thus, inquiry of the occupant would have revealed the claim of the aunt and "furnished a natural clue to the ultimate fact" of her equitable ownership. While the *Lumb* court stated that "a purchaser could reasonably be expected to inquire of the tenant in possession of the property or the co-owner of the property to learn facts which might affect the title," the court failed to cite any authority for the proposition that a purchaser has a duty to inquire of co-owners about the status of title. *Id.* at 661.

66. *Order* at 25, *in* App. at 130.

67. *Id.* at 27, *in* App. at 132.

68. *See Anderson v. Anderson*, 137 Kan. 833, 22 P.2d 471, 473 (1933).

69. Locating a party in possession in order to inquire about that party's claim to the proper-

ty is generally not a burden. But how much diligence would a purchaser be required to exercise to locate all joint tenants in order to inquire as to whether there are unrecorded agreements among them, if such a duty were imposed? And, if a purchaser was required to inquire whether joint tenants with the same last name were holding their interests in a secret trust, would a purchaser be justified in failing to inquire of joint tenants who did not have the same last name? Would a purchaser be required to determine whether joint tenants are related to each other regardless of their surnames?

70. We also note that, by statute, Kansas permits interests in real property to be titled in a "transfer-on-death" form, so that the estate planning attempted by Wayne could have been accomplished by designating directly on the deed the beneficiaries in whom the Property would vest upon his death. *See* Kan. Stat. Ann. § 59–3501. Such a designation may be changed or revoked without the consent of the beneficiary. *Id.* § 59–3503. The availability of transfer-on-death deeds in Kansas obviates the need to resort to a joint tenancy deed as an estate planning tool, and increases the reliability of land records. The fact that Kansas has such a statute further weighs against imposing a duty on purchasers to inquire of joint tenants regarding whether their interests are subject to a secret trust and were intended to vest only on death of one of the joint tenants.

The comprehensive treatise on titles, *Patton and Palomar on Land Titles*, explains that recording statutes such as Section 58–2222 of the Kansas Statutes are designed to operate as follows—

[A] purchaser is charged with notice of any matters affecting the title that are expressly set forth in any instrument or proceeding that forms an essential link in the chain of title. In addition, if instruments within the record chain of title reveal facts that would have prompted a reasonable purchaser to inquire further, then the purchaser is charged with notice of whatever facts a reasonable inquiry would have revealed. Thus, when an earlier conveyance is of record, a subsequent purchaser cannot fulfill the statutory or judicial requirement of "innocent" or "without notice." The legal consequences of constructive notice from the record and actual notice are the same. So long as an instrument is properly recorded within the chain of title, the fact that a subsequent purchaser searched the records and failed to find it does not prevent its giving notice. Subsequent purchasers are charged with the notice the record creates, whether they search the records or not—if they do not examine the records they are charged with constructive notice of their contents; if they examine them, they have actual notice of their contents.[71]

In light of the efficiency and purpose of the recording statute, the risk of loss vis-a-vis a subsequent purchaser of real property is justifiably placed on the party who failed to provide constructive notice to potential purchasers by simply recording his or her claim or interest.

Grantees who fail to give notice by recording their conveyances negligently leave the way open for their grantors to convey to others who have no notice of a prior transfer. Three different rationales are given from this perspective for the operation of the recording acts. Some courts explain that where one of two persons must bear a loss by the wrong or mistake of a third party, the one most at fault in permitting the fraud is guilty of a constructive fraud and is the one who should bear the loss. Other courts reason that recording acts are a legislative extension of the doctrine of estoppel, preventing grantees who fail to record to give public notice of their claim from successfully asserting title to the detriment of a subsequent purchaser. The third rationale is that of academic commentators who posit that the loss should fall upon the cheapest cost-avoider, who usually is the prior purchaser. They reason that if the prior purchaser knows it can be defeated by a subsequent purchaser who cannot find the prior recorded instrument in a standard chain of title search, then that one individual purchaser will take a few inexpensive, additional steps to prevent such a loss, such as timely recording its deed, ascertaining before recording that its grantor's deed also is of record, and checking the record after filing with the registrar to ensure that its deed was correctly recorded and is discoverable in a standard chain of title search. In contrast, placing the loss on the subsequent purchaser or lender generally would mean that, in order to avoid losses from instruments recorded outside the chain of title, all purchasers or lenders in the future would have to expand their title searches or bear more risk. Imposing that cost on all subsequent

---

71. Joyce Palomar, 1 *Patton and Palomar on Land Titles* § 17 (3d ed.2009) (footnotes omitted).

purchasers and lenders would multiply the expense of avoiding losses from instruments recorded outside the chain of title.[72]

A prospective purchaser must be able to rely on the record title of a selling joint tenant except (1) when the purchaser has actual knowledge of an unrecorded interest (which knowledge does not bind a bankruptcy trustee) or (2) if some evidence in the land records or on the property itself appears inconsistent with the record title. The bankruptcy court erred in imposing a duty to inquire about the possibility of unrecorded transfers or agreements among joint tenants solely because record title is held in joint tenancy.

## V. CONCLUSION

Section 544(a)(3) grants the Trustee all the rights and powers a bona fide purchaser would have as against Wayne's implied trust claim under Kansas law. Under Section 58–2402 of the Kansas Statutes, the Trustee's interest could not be defeated by an unrecorded implied trust unless he had notice of the trust. We conclude that the Trustee had no constructive or implied notice that the Debtor held his undivided one-third interest in the Property in trust for the benefit of Wayne. Accordingly, the Trustee qualified as a bona fide purchaser of the Debtor's interest under Kansas law and holds the Debtor's interest in the Property free of Wayne's equitable interest. The Order Denying Trustee's Complaint to Sell Jointly Owned Property is REVERSED and this matter is REMANDED to the bankruptcy court to make findings and conclusions consistent with this Opinion regarding the elements of § 363(h).